## Earl and Marguerite Farnsworth
### v.
## Sherman and Theresa Cochran

[ 212 A.2d 818 ]

April Term, 1965

Present: **Holden, C. J., Shangraw, Barney, Smith and Keyser, J. J.**

Opinion Filed June 1, 1965

Recalled and Refiled July 23, 1965

*Hanford Davis* for plaintiffs.

*Reginald T. Abare* and *Joseph Palmisano* for defendants.

**Keyser, J.**   The decree of the chancellor on findings of fact adjudged that the transaction between these parties involving about $38,000.00 and a warranty deed of plaintiffs' 800-acre farm to the defendants with a repurchase lease agreement back to plaintiffs, was an usurious contract.   The decree declared the deed and lease were null and void and further that the transaction was a loan secured by an equitable mortgage.   Both parties have appealed from the decree.

The plaintiffs claim error in the refusal of the court to invoke the penalty provided by 9 V.S.A. § 34 (b) relating to usurious obligations. The defendants claim Findings of Fact 8(e), 24, 47, 49, 54-57 and Supplemental Finding 60 do not have evidentiary support.

In 1961, Plaintiffs' farm in Waltham was under foreclosure decree by the Federal Land Bank, the redemption period to expire September 13, 1961.   There was also a second mortgage.   On September 9, 1961, plaintiffs made an arrangement with one Samuel Emilo to raise the money to pay these mortgages which totaled $35,351.27.   Plaintiffs gave Emilo a warranty deed of the property so he could use it as security.   Concurrently, Emilo gave plaintiffs an option to repurchase their farm within a six-month period upon the payment of the above sum plus interest at six per cent and the further sum of $1,000.00 for each month the option was not exercised.

In October 1961, plaintiffs purchased some cattle from Nelson Camire, a business associate of defendant Sherman Cochran, who helped finance the deal.   From an examination of the town land records, Camire and the defendants became aware of plaintiffs' financial condition.   This led to talks with the plaintiffs who gave them the full details of their transaction with Emilo.

The plaintiffs had a considerable amount of hay in the barn and an arrangement was made for plaintiffs to board some 200 heifers for Camire and Cochran from December to April at $8.00 per head per month to help their financial situation.   Shortly after the animals were brought to the farm Camire withdrew from the transaction leaving the matter between the plaintiffs and defendants.   During this time from October into December Camire and defendants knew plaintiffs would lose their farm in April 1962 unless Emilo was paid and also knew plaintiffs were looking for someone to help them out financially.

Camire decided to do so as Emilo had done. On December 20, 1961, Mrs. Cochran telephoned Mr. Farnsworth asking whether he wished to place the option with Camire or did he want to go along with them. Plaintiffs decided to have the defendants handle the transaction. The defendants knew all the facts surrounding the Emilo transaction as Camire did. This transaction was consummated on December 29, 1961, by the defendants paying the Emilo debt of $37,817.16, and obtaining a quit-claim deed from Emilo to defendants, the execution of a warranty deed from the plaintiffs to defendants and a lease agreement from defendants to plaintiffs. Defendants used the property as security for a bank loan of $38,000.00, payable $4,000.00 annually with interest at 6%. Fire insurance was placed on the buildings for $65,-000.00.

The lease agreement provided for rent of $4,000.00 payable in equal monthly payments plus taxes and insurance. Plaintiffs were granted an option to repurchase the farm on or before December 31, 1962, at a price of $44,000.00. This price was an arbitrary figure fixed solely by the defendants who knew plaintiffs concern over losing their farm.

It was plaintiffs' belief the option price was to be $40,000.00 ($38,000.00 plus $2,000 profit), to be paid at the rate of $4,000.00 annually plus interest at 6%. Mr. Farnsworth did not read the agreement until he arrived home for lack of his glasses. He contacted defendants that night to complain. The next day it was agreed to extend the lease for at least one additional year with an increased annual payment, the sum of $6,400.00 being discussed. Defendants refused to reduce the option price. A new lease was never executed.

In May 1963, Mr. Farnsworth offered defendants through their attorney the amount then due in his calculations of $36,000.00 plus interest which was refused. Defendants brought an ejectment suit against the plaintiffs in June 1963 which resulted in this action in equity.

We first consider defendants' exceptions to the findings of fact. Their exceptions are directed to Findings 8(e), 24, 47, 49, 54-57 and Supp. 60. As we said in *Little* v. *Little*, 124 Vt. 178, 200 A.2d 276, at p. 182: "We must read the evidence in support of the findings, if reasonably possible, when considered as a whole", and "must have in mind that it is the trier of fact to whom is given the sole determination as to the weight of the evidence, the credibility of the witnesses, and the persuasive effect of the testimony. 12 V.S.A. §2385."

Finding 8(e) excepted to by defendants is as follows:

"That plaintiffs conveyed their property to Emilo so he could use it as security for a loan from which to pay off the then mortgage indebtedness on the property."

This was but one facet of information the court found the defendants were aware of before their transaction was consummated with the plaintiffs on December 29, 1961. It was acquired by them as a result of their inspection of the land records and their conversations with the plaintiffs. Defendants urge that the finding is based on inadmissible testimony.

Mr. Farnsworth testified, without objection, that in October, 1961, he talked back and forth with Mr. Cochran and Mr. Camire as to the terms of the deal he had with Emilo. He told them he gave Emilo a deed to the farm; that he had to, to get the money as he couldn't borrow the money himself and Emilo had to have the deed with which to borrow the money. He also testified Emilo raised the money by mortgage on the farm and it was used to pay off mortgages. Mr. Camire corroborated this testimony.

This evidence was admissible as bearing on the issue that defendants had knowledge of the nature and facts surrounding the transaction between plaintiffs and Emilo, and having such knowledge, made the same deal with plaintiffs as Emilo did.

The defendants argue several points in their brief under this exception which have no apparent relevancy to the finding or challenge it in any way. Our reading of the transcript lends no support to defendants' claim. This exception is without merit.

Defendants next exception is to Finding 24, as being concluded from inadmissible evidence and not founded on fact. This finding reads:

"It is my conclusion that the plaintiffs were so overcome with fear of losing their farm to Emilo that they failed to take the most fundamental precautions to protect their interest. They needed more time and were willing to do anything to obtain it, including jumping from the frying pan into the fire. The defendants were aware of this and from their standpoint the details of the lease as it concerned terms, amount of annual payment and option price would always be agreeable to the plaintiffs."

The testimony is that Mr. Farnsworth was looking for someone to help him out of his financial difficulty with Emilo. Plaintiffs could not

borrow the money to keep their farm. They thus realized Emilo stood to acquire the farm if financial assistance was not forthcoming. Further than this, plaintiffs were obligated to not only repay Emilo the sum of $35,351.27 with interest, but also this sum was to be increased by $1,000.00 each month that full payment was not made. They had only six months until April 13, 1962 to raise the money to pay debts.

The defendants had knowledge of all this. They were, so to speak, in the driver's seat and had the whip hand.

It was they who dictated the terms of the lease agreement. It was their attorney who drew up this lease but not in the presence of or in conference with the plaintiffs. Mrs. Farnsworth testified that she discussed with Mrs. Cochran that their obligation of $38,000.00 was an urgent one that had to be met in the near future. And Mrs. Cochran testified Farnsworth was in desperate straits and had to do something about his property. There is evidence also that the first amount defendants were going to get out of the transaction was $2,000.00, then it was increased to $3,000. On December 29, 1961, the plaintiffs discovered the lease agreement was at a $6,000.00 increase without agreement on their part.

Defendants' exception is not sustained to this finding.

We give no consideration to defendants' exception to Finding 47. Their brief merely asserts that "the finding is not supported by any admissible evidence, rather the contrary is true." It is sufficient to say that there is adequate evidence to support this finding of the chancellor concerning the transaction between the parties and that it was a loan and not a sale. See also *Whitmore* v. *Mutual Life Insurance Co.*, 122 Vt. 328, 335, 173 A.2d 584.

Defendants' further excepted to Findings 49, and Findings 54-57 inclusive. These are as follows:

"49. I find the so-called lease agreement, Plaintiff's exhibit 15, to be a usurious contract in that it provides for the use of money at a rate in excess of the legal rate of six per cent per annum."

"54. The defendants have advanced or loaned for the benefit of the plaintiffs the sum of $37,817.16. The defendants are entitled to interest on that sum from December 29, 1961 at six per cent per annum."

"55. I find that the provisions of the lease agreement (Pltf. 15) relating to rent and purchase price is null and void as a usurious contract."

"56. Equity regards that as done which ought to be done. I find that the arrangement between the parties should have been a mortgage dated December 29, 1961 securing the sum of $37,817.16 with interest at six per cent per annum."

"57. I find an equitable mortgage dated December 29, 1961 with the plaintiffs as mortgagors and the defendants as mortgagees, said mortgage being to secure the sum of $37,817.16 with interest at six per cent per annum."

The defendants urge that it was incumbent upon the plaintiffs to prove and the court to find that plaintiffs' deal with Emilo was usurious. While the evidence shows its exact nature, the question of it being usurious was not an issue nor a necessary element of the case.

Plaintiffs were only required to show all the facts relating to the Emilo matter of which plaintiffs claimed defendants had knowledge. Plaintiffs claimed it was on the same basis of the Emilo deal that defendants entered into the transaction with them. Proof of, or a finding that, the Emilo transaction was usurious was neither relevant nor material. The question was whether the agreement between the parties in this case was usurious.

Defendants claim there is no admissible evidence that the lease was a usurious contract and that a debt, or loan, was created between the parties. We first consider whether the transaction between the parties was a loan thus creating a debt, or whether by it the plaintiffs sold their farm to the defendants.

Was the money furnished by defendants to pay off Emilo a loan as found by the court? It is clear that the defendants had complete knowledge of the facts involved in plaintiffs' financial arrangements with Emilo, that it was not a sale but a deed with the right under a collateral instrument to redeem the farm premises by meeting certain terms of repayment. The very fact that defendants paid Emilo the exact amount due him shows they were aware of this fact. The defendants agreed to make the same arrangements with the plaintiffs. They were to have a deed of the farm so they could use it as security for a loan.

Terms of repayment were talked over, papers drawn by defendants' attorney and the transaction completed on December 29, 1961. There never was any negotiations by defendants with Emilo. They were always with plaintiffs. Plaintiffs testified they did not talk with defendants about selling the farm to them. Mr. Farnsworth testified that in October in a conversation with Mr. Cochran and Mr. Camire

they said they knew it would take $38,000.00 to pay off Emilo and "we will let you have the money, loan you the money." At first Mr. Camire was to do the refinancing but later after he had raised the money he was "cut out" of the matter by the defendants who took over the transaction. Plaintiffs' possession of the property was never interrupted.

When Mrs. Cochran called Mr. Farnsworth about the defendants taking over the deal and paying up Emilo instead of Camire she said: "Would you consider letting us loan you the money." Mrs. Cochran admitted they never went to the plaintiffs and asked or talked about the sale of the farm or its purchase price and never saw Emilo about the purchase, or price, of the farm either.

Furthermore, after the matter was closed on December 29, 1961, the defendants wrote numerous letters to the plaintiffs. These contained various statements from which the court could reasonably infer that the defendants did loan plaintiffs the money to pay Emilo. One example is: "We placed the heifers on the property at a cost of $20,000.00 so to give Earl, a source of income to reduce his farm mortgage annually."

The accounting statement obtained by defendants and furnished plaintiffs of defendants payment to attorney Bosworth shows the Emilo deal, of which defendants had knowledge, was a loan drawing interest as well as payment to Emilo of $3,533.33 representing his profit on the deal.

A further indication that defendants treated it as a loan is that in their account to plaintiffs for care of defendants' heifers they included the amount of "annual payment on farm note" and "annual payment of interest on farm note at Granite Bank." The payment on the farm note mentioned in the statement equals the exact amount set forth in the lease as rent for one year. While there is no stipulation for payment of interest in the lease, the defendants nevertheless charged plaintiffs with interest for one year in their above accounting.

While the chancellor might have found the transaction was either a sale or a loan, there was substantial evidence to support his conclusion that it was a loan and not a sale.

It is sufficient without further discussion to say that from all the evidence we are persuaded that Findings 54, 56 and 57, excepted to by defendants, are fairly and reasonably supported by legitimate evidence and must stand. *Little* v. *Little,* supra.

■ Was the lease agreement a usurious contract as found by the court? To constitute usury it is essential that an excess of the legal maximum rate of interest prescribed by statute be exacted in consideration of a loan or forbearance, but the extent of the advantage, or the amount of the surplus, in excess of legal interest is wholly inconsequential. 55 Am. Jur. Usury § 36, pg. 350.

An usurious contract is one which stipulates for the payment of more than lawful interest, for the use of money. 91 C.J.S. Usury §1 pg. 558.

■ A contract is usurious when any premium, profit, bonus, or charge is exacted or required by the lender in excess of the money actually loaned, which, in addition to the interest stipulated, renders the return to the lender greater than the lawful rate of interest. *Hall v. Mortgage Secur. Corp.*, 119 W. Va. 140, 111 A.L.R. 118.

■ Generally speaking, usury will not be presumed, since it depends upon the wrongful intent, or purpose of the lender, at least, to contract for something which the law forbids. *Strong Hardware Co. v.Gonyow*, 105 Vt. 415, 420, 168 Atl. 547. When the intention of the parties as to the governing law is not specifically expressed in the contract, it may be inferred from the terms of the contract taken in connection with all the circumstances surrounding the transaction and it may be shown by outward acts, by what was done and the true nature of the contract. 91 C.J.S., Usury, Pg. 560, §4(2). The language of *Strong Hardware Co.* v. *Gonyow,* supra, at p. 420 is well adapted to this case. The lease agreement, "standing alone, bears no indication that it is usurious. But when we consider its role in the entire transaction of which it was a part, as we must, it does not appear to be so innocent." The salient facts surrounding the transaction already appear supra. The fair and reasonable construction of the terms of the lease agreement in view of the dealings of the parties as shown by all of the subordinate facts found by the chancellor convinces us that Findings 49 and 55 are without error. Moreover, once the chancellor found the transaction was a loan and not a sale, the contract became usurious as a matter of law.

Sustaining, as we do, the findings that the transaction is a loan and not a sale the defendants then urge their exception to Supplemental Finding 60, part of which reads thus:

"In May of 1963, Mr. Farnsworth offered the defendants through their attorney the amount then due in his calculations of

$36,000.00 plus interest. This offer was refused by defendants' counsel who demanded the contract price."

Defendants contend a tender was not made as concluded by the finding. They question the effect of the finding but do not urge that it is not supported by the evidence in the record. We are not persuaded by defendants' contention.

The findings show that the sum due defendants on June 1, 1963, including interest, was $34,050.01. This is more than $2,000.00 less than the plaintiffs offered defendants as their offer was $36,000.00 plus interest. The defendants refused the amount offered solely because they as here, claimed the transaction was a sale and not a loan and demanded the contract price of $44,000.00.

Under the circumstances shown in this case to say that Mr. Farnsworth's attorney, having been told the offer was refused, should have "held out his hand with the money in it and tender it as payment of a debt" which defendants say did not exist, would have been a useless gesture. The rejection of the offer by the defendants and their demand for the contract price rendered unnecessary any requirement, or necessity, by the plaintiffs to proceed further and produce the money "in hand" to the defendants.

In this case, the tender is the offer of performance by plaintiffs, not performance itself, and, when unjustifiably refused, places the defendants in default, thus permitting the court to apply the remedy it did. See *Walker* v. *Houston,* 215 Cal. 742, 12 P.2d 952, 953, 87 ALR 937; *McClain* v. *Batton,* 50 W. Va. 131, 130, 40 S.E. 509; *Shaner* v. *West Coast Life Ins. Co.,* C.C.A. Colo., 73 F.2d 681, 684.

Moreover, the purpose of a tender is to put the other party in violation. Here the violation had already occurred on the part of the defendants and tender was not required by law. Defendants' exception to this finding is unavailing.

The plaintiffs' execption is to the refusal of the court to invoke the penal provisions of 9 V.S.A. §34(b). This reads as follows:

"Except as otherwise expressly authorized by law, a lender shall not knowingly or wilfully make any contract, express or implied, which directly or indirectly calls for the payment of any interest or discount in excess of the legal rate as set forth in section 31 of this title. This section shall be enforceable only to the extent herein provided and the lender shall have no right to collect any interest or charges whatsoever and shall have a right to collect only one-half of the principal."

Section 31 referred to fixes the legal rate of interest as applied to this case at six per cent per annum. Plaintiffs contend that defendants are entitled to only one-half of the principal sum due them on the loan under the above statutory provision.

By Finding 52 the chancellor found the defendants did not knowingly or wilfully enter into or make a contract which directly or indirectly called for the payment of interest in excess of the legal rate. If the penalty is to be invoked, more is required than the fact that the contract is merely usurious.

■ To prevail as to this, the plaintiffs, under our usury law, must prove not only that the transaction was a loan and usurious but also they must go one step further and prove that the lender entered into the contract knowingly or wilfully with a wrongful intent. See *State* v. *Bosworth*, 124 Vt. 3, 197 A.2d 477, which is a prosecution under subsection (c) of 9 V.S.A. §34. The legislature by the enactment of subsection (b) of the statute made the distinction clearly evident between a penalty being invoked or not invoked.

The defendants as lender must have acted knowingly or wilfully that they were making an usurious agreement. The statute specifically provides that "this section shall be enforceable only to the extent herein provided." Not only are we confronted with the finding which negates the fact that the defendants acted knowingly or wilfully, but also we have subordinate findings which lend support to the fact that defendants lacked the knowledge or wilfulness required by subsection (b).

Under the statute, 9 V.S.A. §34(a), the person paying a greater rate of interest than the legal rate has the right to recover the amount so paid with interest and expenses of collection. This subsection of the statute thus provides a recovery if usury is present. It is only when the lender acts knowingly or wilfully that the penalty provisions of subsection (b) apply and are to be invoked.

The plaintiffs argue that to sustain the decree in this case would be tantamount to a repeal of the usury statutes by judicial construction. But we are bound by the finding of the chancellor and its applicability to the statute in question.

To sustain the decree is not to repeal the statute as plaintiffs say. But to adopt plaintiffs interpretation would be to enlarge the scope of the statute by including in subsection 34(a) the penal provisions of subsection (b). It is apparent that it was the obvious purpose of the legislature to invoke the harsh penalty provisions of subsection (b) as to

collection of interest, charges, or principal only in cases where there is clear proof that the lender, with full knowledge of the usurious nature of the agreement, deliberately went forward with the transaction. This construction is manifested by the language of the statute and overrides plaintiffs' argument that the defendants shall receive only one-half of principal amount.

Plaintiffs also urge it was error for the court to order that each party shall stand their own costs, citing *Thrall* v. *Chittenden* 31 Vt. 183. Plaintiffs do not brief any argument why they should be allowed costs below. We think the reason is apparent on the record for the order. The court exercised its discretion in adjudicating the matter of costs. It not being shown that was an abuse of discretion, error does not appear. Also see *Lamoille Val. R. Co.* v. *Bixby,* 57 Vt. 548, 564; *Joslyn* v. *Parlin,* 54 Vt. 670, 676.

We have considered the various exceptions briefed by the parties and are convinced the proceedings below are without error. The decree below must be affirmed.

It appears from the decree that an additional sum, or sums, may be due under its provisions and a new redemption period may be required to be fixed.

*Decree affirmed with costs. Cause is remanded for the computation of any additional sum, or sums, which may have accrued under the decree and for a time of redemption to be fixed. Let full entry go down.*

Note: After the opinion in the case was handed down the plaintiffs moved for leave to reargue. Also, the defendants moved for a clarification relating to the question of tender and for a remand to determine any additional amounts due defendants under the decree.

By reason of such defendants' motion, the opinion was recalled and certain changes have been made. The revision of the opinion does not alter the result previously reached.

The opinion disposed of the question presented for decision by the plaintiffs, principally whether they were entitled to the penalty under 9 V.S.A. §34(b). This is the same ground on which their motion for reargument is based. We find no reason to grant the motion and it is denied.