**Pioneer Credit Corporation v. Howard Carden and Winifred Carden**

**Pioneer Credit Corporation v. Howard Carden**

[ 245 A.2d 891 ]

April Term, 1968

Present: **Holden, C.J., Shangraw, Barney, Smith and Keyser, JJ.**

Opinion Filed June 4, 1968

230

*Peter Forbes Langrock, Esq.,* for the Plaintiff.

*Underwood, Lynch & Ketcham* for the Defendants.

**Holden, C.J.** The plaintiff Pioneer Credit Corporation brings this appeal from an affirmative judgment for the defendants on counter-

claims in consolidated actions in the Addison County Court. The actions were commenced by the plaintiff against Howard and Winifred Carden of Hancock, Vermont to recover on two promissory notes. The defendants pleaded that the notes were usurious "being in excess of the legal rate of interest in Vermont—." By way of set-off, the defendants claimed aggregate damages under the Vermont statute in the amount of $22,500.

During the course of the trial by jury, the parties stipulated to discharge the jury and submit the issues for trial by the court. Findings of fact were filed, resulting in a consolidated judgment for the defendants to recover in both actions.

The defendant Howard Carden is engaged in the business of drilling wells. Sometime in February, 1960, he undertook the purchase of a new Schramm Rota Drill through Paul F. Allyn, a partner in a firm designated as Allyn Brothers of East Canaan, Connecticut. In the course of the transaction the defendant and Allyn went to the plaintiff's office in Great Barrington, Massachusetts, and requested the plaintiff's treasurer, one Hawkes, to finance the purchase.

After this meeting the defendant Howard Carden and his wife returned on February 17, 1960, with Allyn, to the plaintiff's office in Massachusetts. On this occasion the plaintiff advanced the funds and the defendants signed a promissory note in the amount of $43,832.52. The amount of the note included the total purchase price of $36,000, a life insurance premium of $225.00 and finance charges of $7,607.52. The note was payable at Great Barrington, Massachusetts, in thirty-six equal monthly installments. The note was indorsed by Paul F. Allyn of Allyn Brothers.

At the same time, the defendants executed a chattel mortgage to the plaintiff, extending a lien to the newly acquired equipment and included other property then in the defendants' possession in Vermont. The mortgage was recorded by the plaintiff at the office of the town clerk of Hancock.

The note was not paid according to its terms. After numerous communications between the parties concerning the delinquencies in payments, the defendants executed a refinancing agreement on April 24, 1962. This instrument referred to the original obligation, the amount due and the balance of $20,518 refinanced. To this was added a credit life insurance charge of $185.00 and finance charges of $4,346.48. It further stipulated that, except as modified, all terms

and conditions of the first agreement should remain in full force and effect. The refinancing agreement was forwarded to the defendants at Hancock, where it was signed by them and returned to the plaintiff in Massachusetts.

The court found that the interest rate to be charged in both obligations was not discussed at any time. However, the court determined the rate imposed was seven per cent, computed from the respective dates of execution.

On October 29, 1962, Paul F. Allyn sold the defendant Howard Carden an Ingersoll Rand Hammer to overcome some problems the defendants had experienced with the Schramm Rota Drill. Again, the financing was arranged with the plaintiff and accomplished by a promissory note signed by this defendant, payable to the Pioneer Corporation at its office in Great Barrington, Massachusetts. The note specified the principal amount of the loan to be $2,851.00 with pre-computed interest charges of $399.14, payable by installments in the total amount of $3,250.14. The note had a marginal notation— "straight 7% rate." At the time of signing this note the defendant executed a security agreement on the equipment purchased and an instrument entitled "Vermont Lien," which was thereafter recorded with the town clerk of Hancock.

On the strength of these facts the lower court applied the statutory law of Vermont which fixes the lawful rate of interest at six per cent a year. 9 V.S.A. §31. The court then went on to invoke the usury statute enacted in 1961. 9 V.S.A. §34(a) (b) as amended 1961, No. 224 §4:

§34. Usury recoverable

(a) When a greater rate of interest than is allowed by law is paid, the person paying it may recover the amount so paid above the legal interest, with interest thereon from the time of payment and all expenses of collection, including a reasonable attorney's fee, in a civil action on this statute.

(b) Except as otherwise expressly authorized by law, a lender shall not knowingly or willfully make any contract, express or implied, which directly or indirectly calls for the payment of any interest or discount in excess of the legal rate as set forth in 9 V.S.A. §31. The section shall be enforceable only to the extent herein provided and the lender shall have no right to collect any

interest or charges whatsoever and shall have a right to collect only one-half of the principal.

The court's application of these subsections resulted in the extinguishment of the principal obligation in suit and awarded recovery to the defendants. The considerations which directed the court's choice of the Vermont law in this disposition, are reported at the conclusion of its findings.

The court determined that the notes in suit, as security instruments, had their center of gravity and beneficial contacts in Vermont. Stating the law of Massachusetts was neither pleaded nor offered in evidence, the court held, pursuant to 9 V.S.A. §34(b), *supra,* that the plaintiff was entitled to no interest and only half of the principal obligation.

The notes in suit can be related to Vermont only by way of the residence of the makers and the location of the property they offered as security. These points of contact do not locate the "center of gravity" of the principal obligations in Vermont. The mortgaged property is collateral to the promissory notes which are the basis of this action. Neither the title to that property nor the mortgage lien is involved. Compare *Boston Law Book Company* v. *Hathorn,* 119 Vt. 416, 423, 127 A.2d 120; *General Acceptance Corp.* v. *Lyons,* 125 Vt. 332, 334, 215 A.2d 513.

■ The significant factors involved in the choice of law applicable, according to this doctrine are: "(a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicil, residence, nationality, place of incorporation and place of business of the parties." Restatement, Conflict of Laws §188 (Proposed Draft, Part II, May 1, 1968). In evaluating the relative importance of these contact points of the contract, the place of making and the place of performance are entitled to substantial weight in the choice of the applicable law. *Haag* v. *Barnes,* 9 N.Y.2d 554, 216 N.Y.S.2d 65, 175, N.E.2d 441, 444, 87 A.L.R.2d 1301.

■ At the outset, the parties' rights and obligations in these instruments are governed by the law of Massachusetts where the notes were made, delivered and payable. *Resource Holding Corp.* v. *Schoff's Estate,* 105 Vt. 144, 145, 163 A. 768. See also *General Acceptance Corp.* v. *Lyons, supra,* 125 Vt. at 334, 215 A.2d 513; *Coral Gables,*

*Inc.* v. *Christopher,* 108 Vt. 414, 417, 189 A. 147, 109 A.L.R. 474. And this is especially true in cases involving conflict of laws on the subject of usury. 2 Beale, Conflict of Laws, §347.4 p. 1241.

■ Absent a purposeful scheme to evade our usury laws, "(a) contract to be usurious by our law must not only be made here, but to be performed here." *Peck* v. *Mayo, Follett & Co.,* 14 Vt. 33, 39, cited with approval in *Coghlan* v. *So. Carolina Railroad Co.,* 142 U.S. 101, 12 S.Ct. 150, 35 L.Ed. 951, 954. To the same effect is *Seeman* v. *Philadelphia Warehouse Co.,* 274 U.S. 403, 47 S.Ct. 626, 71 L.Ed. 1123, 1126.

But as the trial court pointed out, the law of Massachusetts was not claimed by the plaintiffs to support its right to recover on the notes according to their terms. Neither did the defendants rely on Massachusetts law as the basis for their claim of illegality.

■ This predicament cuts two ways. It precludes the plaintiff from recovering precomputed interest of seven per cent under the law of Massachusetts. By the same token, it strikes down the defence of illegality, for we are not to presume that a contract for money hired and loaned in Massachusetts, violates the law of that jurisdiction. *Tuttle & Reed* v. *Holland,* 43 Vt. 542, 545.

■ In this dilemma, and absent any *prima facie* showing of the Massachusetts authority under 12 V.S.A. §1699, the trial court was justified in turning to the law of the forum. *Grow* v. *Washburn,* 95 Vt. 370, 373, 115 A. 226. Indeed this was a necessity created by failure of proof, rather than a valid presumption of similarity. If the litigation was to proceed to a determination, it had to be on the basis of some applicable law. *Grow* v. *Washburn, supra,* 95 Vt. at 373, 115 A. 226; 3 Beale, Conflict of Laws, §622A.2.

■■ The assumption, that the law of Massachusetts is like our own, is justified so long as it is reasonable and does not impose oppressive consequences. *Cuba Railroad Co.* v. *Crosby,* 222 U.S. 473, 32 S.Ct. 132, 56 L.Ed. 274, 278. (Holmes, J.) It cannot be assumed that the plaintiff made these loans to the defendants in Massachusetts under the penalty of a usury statute, similar to our own, without affirmative proof that such was the actual fact. See *Langdon* v. *Young,* 33 Vt. 136, 139. (Redfield, C.J.)

Moreover, the sanctions which the court applied were not enacted until 1961. The act expressly states that it shall not apply to any evi-

dence of indebtedness made prior to its effective date, July 18, 1961. 1961, No. 224 §5.

Apparently the trial court considered the original note of February 17, 1960 to have been discharged by the subsequent refinancing agreement of 1962. The defendants seek to support the application of the statute on the ground that the refinancing agreement constituted a novation which became effective after the 1961 amendment.

■ Whether the refinancing agreement operated to discharge the original note is governed by the intention of the parties. And a novation is never presumed. *Manley Bros. Co., Inc.* v. *Somers,* 100 Vt. 292, 297, 137 A. 336. The refinancing agreement declares that all terms and conditions of the original obligation shall remain in full force and effect. And in Finding 17 the court determined that the 1962 undertaking reaffirmed the first note, modifying only the terms of payments and stipulating for reasonable attorney's fees.

■ It is, of course, true that we must look for all reasonable inferences to support the findings and judgment under review. 12 V.S.A. §2385. *Cass-Warner* v. *Brickman,* 126 Vt. 329, 333, 229, A.2d 309. But we can not supply the inference that the refinancing arrangement discharged the defendants from their first obligation when this conclusion is refuted by other findings and the manifest intention of the parties. *Manley Bros. Co., Inc.* v. *Somers, supra,* 100 Vt. at 297, 137 A. 336. Compare *F. I. Somers & Sons, Inc.* v. *LeClerc,* 110 Vt. 408, 412, 8 A.2d 663, 124 A.L.R. 1494. We hold the original note of 1960 was modified by the refinancing agreement, but it was not discharged.

This Court has held "that no state will enforce penalties imposed by the laws of another state. Such laws are universally considered as having no extra-territorial operation or effect, whether the penalty be to the public or to persons. They are strictly local, and effect nothing more than they can reach within the limits of the state in which they were enacted. They cannot be enforced in the courts of another state, either by force of the statute, or upon the principles of state comity." *Blaine* v. *Curtis,* 59 Vt. 120, 124, 7 A. 708, 711.

■■ Reciprocal considerations forbid our courts to give effect to that provision of the original undertaking which recites that the finance charges are not regulated by law. Whether the recital has reference to the law of the place of the contract does not concern us in

the posture of this appeal. The maximum rate of interest allowed by our statute sets "a limit of policy beyond which such obligation will not be enforced there." *Cuba Railroad Co.* v. *Crosby, supra,* 222 U.S. at 478, 32 S.Ct. at 132; *In re Dennis' Estate,* 98 Vt. 424, 427, 129 A. 166. See also *Porter* v. *Munger* 22 Vt. 191, 197.

Prior to the 1961 amendment referred to above, the legal rate of interest was six per cent and the practice of precomputation was not recognized. If a note of interest was paid, greater than that allowed by law, the payor was entitled to recover or offset the excess in an action of contract. 9 V.S.A. §§31-34 (as revised in 1958). As to the right of offset, see *McDonald* v. *Smith,* 57 Vt. 502, 503.

The independent obligation evidenced by the note of October 29, 1962, signed by Howard Carden alone, stands differently. No. 224 §3(c) made it permissible to charge interest in advance from the date of the loan to the date of the last installment, payable at a rate of $6.00 a year discount for each $100.00 of the total amount of the note. 9 V.S.A. §31(c).

Since the amounts due, with proper credits as to both of these obligations, must be recomputed, we see no occasion to belabor the computations disclosed in the findings.

According to the result reached in lower court, with an affirmative judgment for the defendants, there was no need to adjudicate the amount of attorneys' fees the plaintiff was entitled to recover. Nonetheless, the lower court found—"* * * there is no competent evidence before the Court relative to what is reasonable attorney's fees for collection in this case." This statement is not entirely accurate.

In any event, the original agreement of 1961 provides for "reasonable attorneys' fees." By the provision of the refinancing agreement, this provision controls over the fifteen per cent specified in that undertaking. Since there is to be a remand, we think that question should be reopened to afford the parties the opportunity to present further evidence on that limited issue. See *Darling* v. *Burlington Drug Co.,* 101 Vt. 155, 159, 142 A. 75; 17 Am.Jur.2d, Contracts §§164, 292.

*Judgment reversed and cause remanded for the purpose of correcting the findings of fact and determining the issue of attorneys' fees recoverable, all in accordance with the views stated in the opinion.*

N.B. This opinion and entry order were originally filed at the opening of the June Term, 1968. Thereafter, at request of the de-

fendants, reargument was allowed on the limited question of attorneys' fees. The opinion and entry order were recalled and modified in accordance with the result reached on rehearing.

**Keyser, J.,** took no part in the consideration or disposition of these cases.