### Douglas Crocker II, John L. Hall II and Frank R. Mead v. John M. Brandt and Jerome B. Friedenberg

[293 A.2d 541]

No. 130-71

Present: Shangraw, C.J., Barney, Keyser, Daley, JJ., and Gibson, Supr. J.

Opinion Filed June 6, 1972

Plaintiffs' Motion for Reargument Denied June 15, 1972
Defendants' Motion for Reargument Denied July 12, 1972

*Sten Lium* of *Theriault & Joslin,* Montpelier, for Plaintiffs.

*Free & Bernasconi,* Barre, for Defendants.

**Keyser, J.** Plaintiffs brought their bill to foreclose a mortgage deed upon real estate in the town of Warren known as the "Fat Cat" ski lodge for failure of the defendants to make the payments specified in the note secured by the mortgage. The defendants contested the action upon the ground that the interest charged was usurious under the then applicable Vermont law, 9 V.S.A. § 31. This statute fixed the legal rate at 6%. They also sought affirmative relief under 9 V.S.A. § 34(b) which provided for certain penalties to be imposed where usury is established.

The trial court refused to find as requested by the defendants that the consulting fee of 2% was a hoax designed to circumvent the usury statute. The findings also show that no evidence was introduced upon which a finding could be based as to what the legal rate of interest in Massachusetts was on or prior to January 12, 1968. The court entered a decree of foreclosure in favor of the plaintiffs from which the defendants appealed.

The questions at issue are (1) whether the usury law of Massachusetts or Vermont is to be applied to the contract; (2) whether the contract was usurious and, if true, whether the

statutory penalties provided by 9 V.S.A. § 34(b) were to be levied.

The negotiations leading to the execution of the note and mortgage took place in Massachusetts in the latter part of 1967. Previously, on August 8, 1967, the parties, all domiciled outside Vermont, formulated and signed a memorandum embracing the terms of their agreement for the sale and purchase of the lodge property in question. This was followed by a formal agreement on October 25, 1967, which set forth the terms and conditions of the sale. The memorandum provided that the interest rate was to be 8% divided into a 6% interest payment and a 2% consulting fee. By the later agreement, the parties agreed to a 6% interest payment and a monthly payment of $25 "for consulting services" which were to terminate upon payment of the note. The agreement also provided that the law of Massachusetts was to govern insofar as possible.

The note and mortgage were executed and delivered in Massachusetts on January 12, 1968, the note being for the principal sum of $21,167.00 with interest at 6%. The note was lost and could not be produced in evidence. In addition to the note the mortgage secured "any and all other indebtedness" which would include the 2% consulting fee.

The defendants claim of usury focuses upon the 2% consulting fee. They contend that when this fee is added to the 6% rate of interest on the note the resulting rate is 8% and that this is in excess of the legal rate allowed by 9 V.S.A. § 31.

The plaintiffs argue that the Vermont usury law should not be applied in this case. The Massachusetts law on usury was neither pleaded nor was any evidence concerning it introduced at the trial.

In *Pioneer Credit Corporation* v. *Carden*, 127 Vt. 229, 245 A.2d 891 (1968), the Court was presented with a situation highly similar to the one at bar. In *Pioneer* the question arose as to whether the usury law of Massachusetts or Vermont applied. However, there, as here, the usury law of Massachusetts was neither pleaded nor proven. Former Chief Justice Holden, speaking for the Court on this issue in *Pioneer*, 127 Vt. at 234, stated the law as follows:

352

"In this dilemma, and absent any *prima facie* showing of the Massachusetts authority under 12 V.S.A. § 1699, the trial court was justified in turning to the law of the forum. *Grow* v. *Washburn*, 95 Vt. 370, 373, 115 A. 226. Indeed this was a necessity created by failure of proof, rather than a valid presumption of similarity. If the litigation was to proceed to a determination, it had to be on the basis of some applicable law. *Grow* v. *Washburn*, *supra*, 95 Vt. at 373, 115 A. 226; 3 Beale, Conflict of Laws, § 622A.2."

█ In the posture of the case before us the trial court correctly resolved the conflicts issue when it applied Vermont law.

Turning to the issue of usury, the lower court rejected this defense by its finding as follows:

"27. The defendants claim this monthly payment of twenty-five ($25.00) dollars to be an interest charge, and that the rate of interest paid by said defendants on said mortgage indebtedness is eight (8%) per cent, rather than six (6%) per cent, and therefore usurious, and that the two (2%) per cent consulting fee was and is a hoax designed to circumvent the Vermont interest law in effect at the time the mortgage and note were executed. The Court does not believe this to be a fact and refuses to so find."

█ The first exhibits were petitionees' Exhibits A and B which consisted of a letter dated August 9, 1967, and accompanying memorandum which was a photocopy of the signed memorandum governing the terms of the sale and purchase of the property in question. In the memorandum the interest rate on the second mortgage was described as follows:

"4. The second mortgage begins February 1, 1968 at the rate of $300 per month. The interest rate will be 8% and will be divided into a 6% interest payment and a 2% consulting fee."

This provision of the memorandum is a clear cut and an undeniable statement that the interest rate was fixed at 8%.

It shows the plaintiffs were to collect 8% on the note but 2% over the legal rate was spun off as a so-called consulting fee.

The next exhibit was petitionees' Exhibit C, the sale and purchase agreement signed between the parties on October 25, 1967. In the agreement the parties stated the interest as:

> "To give to Sellers at time of closing a joint and several promissory note in the form annexed hereto as Exhibit A in the principal amount of $21,167, payable monthly the first of each month for 77 months, beginning February 1, 1968, at the rate of $305 per month, with a final payment of $1,830 due and payable on July 1, 1974, which payments shall be deemed to cover payments on account of principal, and on account of interest at the rate of 6% per annum. Said note shall be secured by a second mortgage from Buyers to Sellers covering the premises conveyed. In addition, as compensation for consulting services already rendered by Sellers to Buyers at Buyers' request, Buyers agree to pay $25 per month the first of each month for 77 months, beginning February 1, 1968, and a final payment of $150 due and payable February 1, 1974, but the need for such consultive services and compensation therefore shall be deemed terminated upon payment in full of said promissory note."

Plaintiff Hall handled the transaction with the defendants for himself and as agent for his partners. At his request and upon his instructions the loan was set up on an 8% basis by a loan amortization schedule prepared by Financial Publishing Company of Boston. This was dated January 12, 1968, the same date the note and mortgage were executed, and set forth the following:

| "Rate % | Payment | Loan |
|---|---|---|
| 8.00 | 329.92 | 21,167.00 |
| Term Years | Months | Periods |
| 6 | 6 | 78" |

The schedule shows the amount of net interest (8%), principal payment and the balance of loan after application of the payment. A copy of this schedule was delivered to the defendants. It is significant that the agreement provided for the

termination of the two per cent consulting fee coincidental with the termination date of the plaintiffs' mortgage payments.

Payments on the note were made to Hall by Brandt. Hall used plaintiffs' copy of the amortization schedule to keep a record of when he deposited or received such payments. Each payment of $330 was recorded on this schedule, and shows the application of the payment for the 8% interest due and balance on principal. Hall knew at the time of the negotiations that the Vermont legal rate of interest was 6% and not 8%.

■ Vermont case law evidences some lenders will go to great lengths to disguise any interest charged above the legal limit. For this reason the Court has always viewed the whole transaction when the defense of usury is interposed. In this case it means the court should look beyond the six per cent interest rate stated in the mortgage note and examine the nature of the two per cent consulting fee. See generally Annot., 81 A.L.R.2d 1280 (1962), entitled "Payments under (ostensibly) independent contract as usury."

In *Brown* v. *Pilini & Wilson*, 128 Vt. 324, 329–30, 262 A.2d 479 (1970), this doctrine was stated as follows:

> "In determining the question of usury, the transaction is not to be determined from the standpoint of form. The whole transaction and the interest of the parties, particularly the lender, must be gathered from all the circumstances and events which preceded and accompanied their dealings. *Farnsworth* v. *Cochran*, 125 Vt. 174, 181, 212 A.2d 818; *State* v. *Bosworth*, 124 Vt. 3, 7, 197 A.2d 477."

In *Farnsworth* v. *Cochran*, 125 Vt. 174, 212 A.2d 818 (1965), the plaintiffs fell into financial trouble, and conveyed their premises to the defendant, who, in return, granted the plaintiffs a repurchase lease agreement. The Court found the lease agreement was usurious when payment of rent was considered in light of the purchase price. The Court in discussing usury stated at 125 Vt. at 181:

> "Generally speaking, usury will not be presumed, since it depends upon the wrongful intent, or purpose of the lender, at least, to contract for something which the law

forbids. *Strong Hardware Co.* v. *Gonyow,* 105 Vt. 415, 420, 168 Atl. 547. When the intention of the parties as to the governing law is not specifically expressed in the contract, it may be inferred from the terms of the contract taken in connection with all the circumstances surrounding the transaction and it may be shown by outward acts; by what was done and the true nature of the contract. 91 C.J.S. *Usury,* Pg. 560, § 4(2). The language of *Strong Hardware Co.* v. *Gonyow, supra,* at p. 420 is well adapted to this case. The lease agreement, 'standing alone, bears no indication that it is usurious. But when we consider its role in the entire transaction of which it was a part, as we must, it does not appear to be so innocent.' The salient facts surrounding the transaction already appear *supra.* The fair and reasonable construction of the terms of the lease agreement in view of the dealings of the parties as shown by all of the subordinate facts found by the chancellor convinces us that Findings 49 and 55 are without error. Moreover, once the chancellor found the transaction was a loan and not a sale, the contract became usurious as a matter of law."

In *State* v. *Bosworth,* 124 Vt. 3, 7–8, 197 A.2d 477 (1963), a 9 V.S.A. § 34(c) prosecution arising from the facts presented in *Farnsworth* v. *Cochran, supra,* the court further discussed the policy behind examining the whole transaction when it stated:

"As to the first proposition, we should observe the transactions are not to be looked at merely from the point of view of form. In other words, merely because the transaction took the form of a repurchase agreement does not mean in fact that it did not amount to a loan on usurious terms. As Lord Mansfield tersely stated in *Floyan* v. *Edwards,* Cowp. 112: 'Where the real truth is a loan of money, the wit of man cannot find a shift to take it out of the statute.' There is much sense in the state's attorney's argument that 'the same reasons of necessity that force a borrower into the hands of a usurer would prevent the borrower from dictating the form of the papers to be drawn covering the transaction.' "

The mortgage sought to be foreclosed in *Strong Hardware Co. v. Gonyow,* 105 Vt. 415, 168 A. 547 (1933), contained a clause to the effect that the mortgagee would pay any and all indebtedness of the mortgagor. The plaintiff did this for the defendants when he paid off a $4900 loan. In return the defendants gave the plaintiffs $500 cash, seven notes of $575 each, and one note of $675 representing the sums they received for the sale of two trucks. They also gave the plaintiff a note for $500 payable five months after that date. In their summation of this transaction the Court in *Strong Hardware Co. v. Gonyow, supra,* 105 Vt. at 420–21, stated as follows:

> "This note, standing alone, bears no indication that it is usurious. But when we consider its role in the entire transaction of which it was a part, as we must, it does not appear to be so innocent. That transaction, in effect, was this: The plaintiff loaned defendants $4,900 with which to pay the Credit Corporation note, and for so doing got $5,200 in cash and notes, which were perfectly good and were so considered by the parties at the time, so far as appears, besides the note in question. In other words, the plaintiff received the equivalent of $5,700 for a loan of $4,900. We think that this transaction as a whole, standing alone, justified the chancellor's conclusion that this note is usurious."

Considering the whole transaction of the parties, not merely from the point of view of form, but as gathered from all the circumstances and events which preceded and accompanied their dealings, it is demonstrated with the utmost clarity that the interest rate was settled and being exacted at eight (8) per cent. Insofar as Finding No. 27 of the court is in conflict it cannot stand. We thus hold that as a matter of law the transaction was usurious.

The defendants sought to have the penalty provisions of 9 V.S.A. § 34(b) imposed if usury was present. Section 34(b) provides:

> "34. Usury recoverable
>
> (b) Except as otherwise expressly authorized by law, a lender shall not knowingly or willfully make any contract, express or implied, which directly or indirectly calls

for the payment of any interest or discount in excess of the legal rate as set forth in section 31 of this title. The section shall be enforceable only to the extent herein provided and the lender shall have no right to collect any interest or charges whatsoever and shall have a right to collect only one-half of the principal."

In Finding 37 the trial court stated as follows:

"Plaintiff Hall knew at the time of the negotiations by the parties as found herein, that the legal rate of interest under the laws of Vermont was six (6%) per cent."

Although this finding is supported by the testimony, the parties intended the note to be governed by the laws of Massachusetts. It was only due to a failure of proof on part of the plaintiffs that the trial court applied Vermont law, instead of Massachusetts law. *Pioneer Credit Corporation* v. *Carden*, 127 Vt. 229, 245 A.2d 891 (1968).

The most recent case construing 9 V.S.A. § 34(b) is *Farnsworth* v. *Cochran*, 125 Vt. 174, 212 A.2d 818 (1965). In that case at 125 Vt. at 183–84, the purpose of the penalty provisions in 9 V.S.A. § 34(b) was declared to be:

"To prevail as to this, the plaintiffs, under our usury law, must prove not only that the transaction was a loan and usurious but also they must go one step further and prove that the lender entered into the contract knowingly or wilfully with a wrongful intent. See *State* v. *Bosworth*, 124 Vt. 3, 197 A.2d 477, which is a prosecution under subsection (c) of 9 V.S.A. § 34. The legislature by the enactment of subsection (b) of the statute made the distinction clearly evident between a penalty being invoked or not invoked. . . .

It is apparent that it was the obvious purpose of the legislature to invoke the harsh penalty provisions of subsection (b) as to collection of interest, charges or principal only in cases where there is clear proof that the lender, with full knowledge of the usurious nature of the agreement, deliberately went forward with the transaction."

In *Farmers Bank* v. *Burchard*, 33 Vt. 346 (1860), usurious interest was charged; however, it was not a result contemplated by the parties. Because of the innocence of the act, the court held the contract nonusurious.

Neither the findings nor the evidence warrant the penalty provided by section 34(b) being assessed against the plaintiffs because clear proof is lacking of a wrongful intent to violate the Vermont laws against usury. We cannot enforce a law which is against our public policy, neither can we impose a penalty. However, the defendants are entitled to the benefits of subsection (a) of the statute and the cause will be remanded for a recomputation of the sum, or sums, due under the mortgage having in mind that the court stated it was unable to find an acceleration provision was contained in the note or mortgage and that several of the installments are not yet due.

*Decree reversed with costs to the defendants. Cause is remanded for a recomputation of the sum, or sums, due under the mortgage, consistent with the views expressed in the opinion, and new redemption periods fixed.*