**EVERGREEN BANK, N.A., Plaintiff,**

**v.**

**John A. SULLIVAN, Jr., Ralph R. DesLauriers, Defendants.**

**No. 2:96–CV–255.**

United States District Court,
D. Vermont.

Oct. 16, 1997.

748

Michael Paul Palmer, Palmer Legal Services, Middlebury, VT, for Evergreen Bank, N.A.

Douglas Clark Pierson, Pierson, Wadhams, Quinn & Yates, Burlington, VT, for John A. Sullivan, Jr.

Thomas Zeller Carlson, Langrock, Sperry & Wool, Burlington, VT, for Ralph DesLauriers.

## OPINION AND ORDER

SESSIONS, District Judge.

Plaintiff Evergreen Bank ("Bank") seeks summary judgment in this collection action against John Sullivan ("Sullivan") for default on an original bank loan and Sullivan's assignment and guarantee to the Bank of a $300,000 promissory note from Bolton Valley Corporation ("BVC") and Ralph DesLauriers ("DesLauriers"). The Bank also seeks summary judgment against DesLauriers for default on his guarantee of Sullivan's obligations to the Bank. Since DesLauriers failed to oppose the Bank's motion, summary judgment against him is automatically granted pursuant to Local Rule 7.1(a)(6). For the reasons that follow, the Bank's Motion for Summary Judgment against Sullivan is granted.[1]

### I. Factual Background

For the purposes of summary judgment, the following facts are undisputed. On September 26, 1991, Sullivan signed a $300,000 Line of Credit Agreement ("LCA") from the Bank in Plattsburgh, New York. The loan credit agreement originated in New York, was guaranteed by BVC and DesLauriers and secured by a second mortgage lien on property owned by BVC. It states that in the case of default, no notice is necessary to

---

**1.** Plaintiff requested oral argument on its Motion for Summary Judgment. The Court finds that the issues have been well briefed and thus de-

collect on the debt.[2] The LCA makes no mention of choice of applicable state law.

On October 4, 1991, BVC and DesLauriers signed and executed a Mortgage Note in the amount of $300,000 payable to Sullivan. Secured by a Mortgage Deed for Bolton Valley, the Mortgage Note referenced and incorporated the terms of the LCA[3] and stated it was to be "governed by and construed in accordance with the laws of the State of Vermont." Mortgage Note at 2 (Paper 1, Exhibit B).

That same day, Sullivan signed and delivered to the Bank an Assignment & Guarantee of Note (A & G), guaranteeing and assigning with recourse the BVC Mortgage Note. Sullivan's guarantee of BVC's payments to the Bank was signed and acknowledged in New York and subject to the terms of the LCA.[4]

Over the next several months Sullivan withdrew the $300,000 available through the line of credit and presumably dispensed it to BVC. Sullivan had little or no contact with the Bank until the Spring of 1994. At that time BVC contacted Sullivan because it had significantly fallen behind in payments and was having difficulty getting the Bank's agreement on a split-payment plan.[5] In negotiating with the Bank on BVC's behalf, the Bank agreed to notify Sullivan of any future delays in payments by BVC. The split payment plan was agreed to by the Bank and BVC caught up on their payments. Sullivan heard from BVC again in December of 1994, when he learned that BVC had again defaulted on their payments and the Bank had not implemented the agreed payment plan. There is no evidence that Sullivan took any action at that time to remedy BVC's default.

Three months later, BVC filed for bankruptcy. Upon learning the Bank was unhappy with BVC's reorganization plan, Sullivan sent a fax to the Bank on June 29, 1995, encouraging support for a second draft of the plan. On July 3, 1995, the Bank notified Sullivan of their vote for confirmation of BVC's second bankruptcy plan but stated that in doing so they would be reserving their rights against Sullivan.

When BVC fell behind on their payments three weeks after their bankruptcy plan was approved, the Bank forwarded to Sullivan a copy of the default notice issued to BVC. On August 18, 1995, the Bank sent another letter to BVC demanding payment and again forwarded a copy to Sullivan. BVC notified the Bank on May 30, 1996, that it would not be making any more payments. On June 7, 1996, the Bank sent Sullivan a copy of the final notice of default that had been sent to BVC.

Since BVC is insolvent, the Bank is suing Sullivan as both the original debtor and as guarantor of BVC's payments. Sullivan does not contest liability but claims the Bank's notice of default was insufficient under Vermont State law therefore precluding summary judgment and entitling him to an offset in damages. While the Bank contends that New York law applies, they believe they have

---

clines to hear oral argument, pursuant to Local rule No. 5(a)(4).

**2.** The credit agreement reads: "In the event any payment due under this agreement remains unpaid for a period of thirty (30) days after written notice delivered by the Bank to the Borrower, or Borrowers become insolvent or unable to pay their debts, or voluntarily suspend transaction of their business, or voluntarily file or involuntarily have filed a petition of bankruptcy, then the obligation under this agreement by the Borrower shall become fully due and payable without presentment, demand, protest or notices of any kind, which the Borrower and Guarantor jointly and individually waive." LCA at 3 (Paper 1, Exhibit A).

**3.** " . . . as though fully set forth herein the provisions and agreements of lender's term loan letter agreement of even date accepted by Borrower.

A default in any provision of said term loan letter agreement or of the real estate mortgage securing the same shall be considered a default of all obligations and instruments." Mortgage Note at 2 (Paper 1, Exhibit B).

**4.** The A & G was made "subject to a certain term loan letter agreement of even date between Assignor and Assignee, which agreement is made a part hereof." A & G at 1, (Paper 1, Exhibit D).

**5.** Owing to the seasonal nature of the ski industry, BVC had proposed to pay interest only on the loan for the seven months of May–November and interest with principal catchup during the more productive revenue months of December–April.

met the notice requirements under either New York or Vermont law.

## II. *Issues and Analysis*

### A. *Standard for Summary Judgment*

Summary judgment is appropriate if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A party seeking summary judgment bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2553. The party opposing summary judgment may not rest on its pleadings, but must set forth specific facts showing there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The evidence of the nonmoving party is to be believed, and all justifiable inferences are to be drawn in its favor. *Id.* at 255, 106 S.Ct. at 2513, (*citing Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970)). Unless there is sufficient evidence to enable a jury to return a verdict in favor of the nonmoving party, there is no issue for trial. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50, 106 S.Ct. at 2511 (citations omitted).

### B. *Choice of Law Analysis*

 It is well established that federal courts determine governing law in diversity actions by looking to choice of law principles in the forum state. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021–22, 85 L.Ed. 1477 (1941). When contractual parties have not specified clearly the state law to be applied to a given case, Vermont utilizes the test laid out in Restatement (Second) Conflict of Laws § 188 to determine which state has the most significant relationship to the transaction and the parties. *Pioneer Credit Corp. v. Carden*, 127 Vt. 229, 233, 245 A.2d 891, 893–94 (1968). According to the Restatement; the factors to be weighed are: (a) the place of contracting; (b) the place of negotiation; (c) the place of

performance; (d) the location of the subject matter of the contract; and (e) the domicile, residence, nationality, place of incorporation and place of business of the parties. Restatement (Second) Conflict of Laws § 188. Having considered each of these factors, the Court concludes that New York law applies in this action.

 As an initial matter, the Court must determine which of the many documents involved in the parties' transactions are central to this cause of . action. The Vermont Supreme Court in *Pioneer* is instructive on this issue. In *Pioneer*, a Vermont couple signed and executed a promissory note in Massachusetts using Vermont property as collateral for their purchase. *Pioneer*, 127 Vt. at 231, 245 A.2d 891. Before concluding Massachusetts law applied, the Vermont Supreme Court first determined that "[t]he mortgaged property is collateral to the promissory notes which are the real basis of this action. Neither the title to that property nor the mortgage lien is involved." *Id.*, at 233, 245 A.2d 891.

By analogy, neither the BVC Mortgage Deed nor the Mortgage Note are central to this claim. Once BVC defaulted on the payment of these debts, the deed and note became secondary to Sullivan's original loan from the Bank and his subsequent Assignment & Guarantee to the Bank of BVC's debt to him. Absent the Note and Deed, Sullivan is still liable for the $300,000 he withdrew and guaranteed. Therefore the Assignment & Guarantee and LCA form the basis of this litigation.

The contact points of the Assignment & Guarantee and the LCA favor New York as the state with the strongest contacts. The subject matter of the action is the outstanding debt on the $300,000 loan from the New York Bank. Both the Assignment & Guarantee and the LCA originated from the Bank. Payments were delivered and made to the Bank. At the time of contracting, the Bank had all of its branches and principal place of business in New York. Vermont had only limited contact with the parties and transactions; Sullivan was a Vermont resident at the

time of contracting and the payments were written in and mailed from Vermont.

In evaluating the contact points of the Assignment & Guarantee and the LCA, "the place of making and the place of performance are entitled to substantial weight in the choice of applicable law." *Pioneer,* 127 Vt. at 233, 245 A.2d 891; *Crocker v. Brandt,* 130 Vt. 349, 351–52, 293 A.2d 541 (1972); *Village of Morrisville Water & Light Dept. v. United States Fidelity & Guar. Co.,* 775 F.Supp. 718, 723 (D.Vt.1991). Both the LCA and the Assignment & Guarantee originated from and were delivered to the Bank. The Assignment & Guarantee was signed and executed in New York. The majority of the performance also took place in New York where payments on the loan were made and processed. In short, Sullivan's obligations were "made, delivered and payable" to the New York Bank. *Pioneer,* 127 Vt. at 233, 245 A.2d 891(Massachusetts law applied to the promissory notes of Vermont residents since that is where "the notes were made, delivered and payable"). Because New York is the state with the most significant contacts, New York law applies to this action.

## C. Notice Requirements

In New York, a guarantee of collection "requires that the holder first proceed against the maker or acceptor by suit and execution, or show that such proceeding would be useless." N.Y. Uniform Commercial Code § 3–416(5) (McKinney, 1997); *Chase Manhattan Bank, N.A. v. Natarelli,* 93 Misc.2d 78, 88, 401 N.Y.S.2d 404, 411 (1977). "When words of guarantee are used presentment, notice of dishonor and protest are not necessary to charge the user." N.Y. U.C.C. § 3–416(5).

 Sullivan knew of BVC's difficulty in making payments. At the very latest, Sullivan was aware of BVC's default by December, 1994, when he was contacted by BVC directly. Sullivan also received notice on July 3, 1995, of the Bank's agreement to BVC's bankruptcy plan and it's intent to reserve it's rights against him. This alone would have been sufficient to meet the bank's statutory duties. *See Consolidated Rail Corp. v. Primary Industries Corp.,* 901 F.Supp. 765, 770 (S.D.N.Y.1995) (requiring notice to guarantor after judgment against primary debtor serves no legitimate purpose where guarantor has been previously notified of default). Still, the Bank offered Sullivan further notices of BVC's default of the bankruptcy payment plan in July and August of 1995, and in June, 1996. The Court concludes that Sullivan was adequately notified of BVC's financial troubles, its default, and the Bank's intention to pursue collection actions.

Furthermore, the Assignment & Guarantee signed by Sullivan incorporated terms from the LCA which specifically waived Sullivan's right to notice of default.[6] A creditor is under no duty to give a guarantor notice of a principal's default without an express provision in the contract. *Chase Manhattan Bank,* 93 Misc.2d at 87, 401 N.Y.S.2d 404; *see also, Battery Associates, Inc. v. J & B Battery Supply, Inc.,* 944 F.Supp. 171, 177 (E.D.N.Y.1996). Given Sullivan expressly waived the requirement of notice, any argument that he is entitled to an offset in damages because of a delay in notification is without merit.

The result would be the same under Vermont law. A guarantor of collection need only receive notice that proper efforts have been made to collect from the original debtor and have proved unavailing. *Sylvester v. Downer,* 18 Vt. 32, 35 (1843); *Vermont Dev. Credit Corp. v. Kitchel* 149 Vt. 421, 544 A.2d 1165 (1988) (because the guarantor is not jointly and severally liable with the maker, s/he is not subject to the notice entitled to co-signers). As discussed above, Sullivan received notice of BVC's default and the Bank's

---

6. *"Default:* In the event any payment due under this agreement remains unpaid for a period of thirty (30) days after written notice delivered by the Bank to the Borrower, or Borrowers become insolvent or unable to pay their debts, or voluntarily suspend transaction of their business, or voluntarily file or involuntarily have filed a petition of bankruptcy, then the obligation under this agreement by the borrowers to the Bank shall become fully due and payable without presentment, demand, protest or notices of any kind, which the Borrower and guarantor jointly and individually waive." LCA at 3, (Document 1, Exhibit A).

subsequent attempts to collect on the debt several times.

Sullivan also takes issue with the Bank's purported lack of effort in collecting directly from BVC. Contrary to his assertion, the record reflects the Bank's ongoing attempts to compel BVC to discharge their debt. Even Sullivan states that the bank had been dealing directly with BVC on the issue of missed payments during the Spring and Winter of 1994. The record also shows the active involvement of both the Bank and Sullivan in the bankruptcy proceedings against BVC. Accordingly there can be no violation of Vermont or New York law in relation to this claim.

III. *Conclusion*

Evergreen's Motion for Summary Judgment (Paper 14) is GRANTED.