EARLE V. ENOS *v.* OWENS SLATE CO.

Special Term at Rutland, November, 1931.

Present: POWERS, C. J., SLACK, MOULTON, THOMPSON, and GRAHAM, JJ.

Opinion filed May 4, 1932.

330

332

*Lawrence, Stafford & O'Brien* for the defendant.

*Novak, Bloomer & Spero* for the plaintiff.

POWERS, C. J. The plaintiff was trucking slate for the Granville Slate Company from the defendant's quarry to the Hydeville railroad station. He was unable to get his pay, and he stopped work. About the first of July, 1927, one of the Owens

called him to the quarry and inquired of him why he was not moving the slate. He explained that he was unable to get his pay from the Granville Slate Company, and informed the three Owens present, whose authority to bind the defendant is not here questioned, that he should draw no more slate on the credit of that company. To this statement, Robert Owens, who appears to have been the defendant's spokesman, replied that neither the plaintiff nor the defendant would get any pay until the slate was drawn. Thereupon, the Owens conferred, and Robert said to the plaintiff, "You go ahead and draw the slate; we will see you get your money." This is according to the testimony of the plaintiff and his witness O'Neil. Another witness, Haven, stated the conversation this way: "If you will draw the slate, we will guarantee your pay." The plaintiff then resumed work, and here seeks to recover the amount of haulage thereafter accruing. Verdict and judgment below were for the plaintiff, and the defendant alleges error.

At the close of the evidence, the defendant moved for a directed verdict. This motion was overruled, and the first exception argued challenges this ruling. The rights of the parties so far as affected by the Statute of Frauds (upon which the defendant relies) depend upon the determination whether the defendant's promise was original or collateral. If it was of the former character, the statute does not stand in the way of a recovery here; if of the latter, the statute is a bar.

It is largely a question of intent, which must be gathered from the language used by the parties, judged by a consideration of their situation, and all the circumstances surrounding the transaction. *Blodgett* v. *Lowell,* 33 Vt. 174, 176 That the form of expression used in a given case ordinarily imports a collateral undertaking is not necessarily conclusive of its legal effect. We agree with counsel for the defendant that ordinarily a satisfactory test of the quality of the promise may be found by ascertaining whether or not the original debtor continues to be liable after the verbal promise sued on is made. *Conti* v. *Johnson,* 91 Vt. 467, 469, 100 Atl. 874. But, in many cases, that is the very question in dispute, and has to go to the jury. In the case just cited it was easy enough for the court to say that the original promise remained in force and that the one relied upon was not supported by a consideration. On the other

hand, in *Pocket* v. *Almon,* 90 Vt. 10, 13, 96 Atl. 421, where the language relied upon was such as usually imports a collateral undertaking, and certain attending circumstances corroborated that theory, there was countervailing evidence that made it a question for the jury. It is so here. The form of the engagement and many of the circumstances point strongly toward a collateral contract. Much of the evidence indicates that the original promissor, the Granville Slate Company, remained liable for this hauling, and that the plaintiff so understood it all along, and he tried to collect the pay from that company. There was evidence which it was claimed showed that the plaintiff actually received payments from that company after the defendant made its promise. But the evidence was not all one way. The defendant had sold this slate to the Granville Slate Company. It was directly interested in getting it to the cars so that it could get its pay. The plaintiff insisted that the payments above referred to were made to apply on the old account that accrued prior to his arrangement with the defendant. Payments on the new hauling account were made by one of the Owens by his personal checks. The plaintiff tried to get more pay from the defendant, but did not succeed. It is true that there was evidence to the effect that Owens made the payments referred to from money supplied by the Granville Slate Company, but this was not conceded. He promised to make other payments. It is said that this was his personal matter anyhow, and did not involve any admission on the part of the defendant. But the testimony was such that the jury might well understand that he was acting and speaking for the defendant. It appeared that the plaintiff tried repeatedly to get money on this account from the Granville Slate company. He explained that this was done after he failed to get his pay from the defendant. It must be remembered that we are not concerned with the weight of the evidence, but only with its tendency. *Cummings* v. *Connecticut General Life Ins. Co.,* 101 Vt. 73, 85, 142 Atl. 82, and cases cited. We think there was evidence warranting the inference that the defendant intended to become primarily bound for the hauling sued for, and that the plaintiff had a right to and did so understand it. *Greene* v. *Burton,* 59 Vt. 423, 425, 10 Atl. 575; *Pocket* v. *Almon,* 90 Vt. 10, 14, 96 Atl. 421. It follows that the evidence

of the defendant's promise was properly admitted and the motion for a verdict was overruled without error.

In the business connected with the sale and delivery of the slate here involved, the Granville Slate Company was represented by a man named Fuchs; and he was spoken of at the trial below when the reference was to that company. When the plaintiff was being cross-examined, he was asked: "At the time you asked your lawyers to make collection, you considered Fuchs was the one who was liable first to pay you, didn't you?" The question was excluded, and the defendant excepted. The answer should have been received. It is obvious that the question related to the attempts made by the plaintiff to collect the pay here sued for from the Granville Slate Company, and was relevant to the question whether the liability of that company continued after the defendant's promise, as he understood it. A reference to *Greene* v. *Burton, supra,* shows that what the plaintiff had a right to understand and what in fact he did understand about this was important to a proper determination of the character of the defendant's obligation. As to what he understood about it, he could testify directly. *Linsley* v. *Lovely,* 26 Vt. 123, 135; *Fife* v. *Cate,* 85 Vt. 418, 430, 82 Atl. 741. If, when the plaintiff was trying to collect his pay for this hauling from the Granville Slate Company, he understood that it was primarily liable to him, it would be a fact of first importance to the defendant's case. This exception is sustained.

The plaintiff claimed to recover on the basis of seventy-five cents per square for quarter-inch slate, one dollar for three-eighths inch, and one dollar and seventy-five cents for half-inch. He testified that these were reasonable prices. The defendant offered in evidence the deposition of Fuchs, wherein he stated that the prices agreed upon between the plaintiff and the Granville Slate Company for this hauling were respectively, seventy-five cents, one dollar, and one dollar and fifty cents. The deposition showed that these prices were for a time increased on account of bad roads, and it then ran on as follows: "Then in the middle of April, when the check for nine hundred and eight dollars was given to Enos, the original prices were agreed upon for all hauling not covered by the check." Upon the plaintiff's objection, this quoted part of the deposition was excluded, and the defendant excepted. When, as here,

336

services are rendered under a contract silent as to the amount to be paid therefor, the law implies that they are to be settled for at a reasonable rate. *Winslow* v. *Fraser,* 30 Vt. 522, 525; *Platt's Admx.* v. *Shields,* 96 Vt. 257, 268, 119 Atl. 520. To meet the testimony of the plaintiff as to what was a reasonable price for the services rendered, it was competent for the defendant to show, not only that lower prices ruled in that vicinity at that time, *Vilas* v. *Downer,* 21 Vt. 419, 425, but also to show specific instances in which such work was done for less money. One who knew what the going price for such work in that vicinity then was, could testify to it. *Vilas* v. *Downer,* 21 Vt. 419, 424; *Watriss* v. *Trendall,* 74 Vt. 54, 57, 52 Atl. 118. In this respect, the question is like that of the reasonable price of goods, in which cases this kind of evidence is received. *Waters* v. *Langdon,* 16 Vt. 570, 573; *Davis* v. *Cotey,* 70 Vt. 120, 122, 39 Atl. 628. The excluded portion of the deposition was well within the rule, and its exclusion was error.

The deposition showed that one Danhauser was the agent of Fuchs in dealing with the plaintiff. It contained this paragraph: "After July 1st, 1927, and until April 1st, 1928, I gave orders to Danhauser in regard to Enos hauling slates from the Owens quarry—and those orders were carried out. There was no change about this at any time while Enos hauled." It was excluded, and the defendant excepted. If the plaintiff was taking orders from the Granville Slate Company regarding the hauling here in question and was complying with them, it was evidence tending to show that such hauling was done under a contract with that company, and it would be admissible to meet and overthrow the plaintiff's claim that he was hauling under an original promise of the defendant. But the deposition was in quite too general terms to warrant the claim here made for it, and contained the inadmissible statement that Danhauser carried out his orders. What the latter did in this respect could only be known by Fuchs from what Danhauser told him, and this inadmissible statement made the exclusion proper. See *Moncion* v. *Bertrand,* 98 Vt. 332, 340, 127 Atl. 371.

Plaintiff's Exhibits A, B, and C were bills of lading purporting to cover shipments of slate from Owens Brothers to Granville Slate Company. They were dated respectively July 29, 1927, August 23, 1927, and August 31, 1927. At the trial

below, the defendant attached to these three undated communications from the plaintiff to the Granville Slate Company. Each of these communications showed on its face that it referred to the shipment covered by the bill of lading to which it was attached and must have been sent on or about the time the bill was dated. To establish the dates of these communications, the defendant introduced the bills. The defendant also introduced the communications, for the purpose, we assume, of showing that in each of them the plaintiff demanded pay for hauling the slate covered by the bills, which was a part of the slate covered by this suit. Later on, the plaintiff offered the bills of lading generally, and when the defendant objected, counsel explained that he was entitled to have the whole communication from the plaintiff to the Granville Slate Company go in, inasmuch as the defendant had introduced a part, to wit, the dates. The bills were admitted, and the defendant excepted. They were not admissible on the grounds stated. It is true that when one party puts in evidence a document or statement, the other party is entitled to put in so much more of it as qualifies or explains the part already admitted. But the rule goes no further. *Adams* v. *Cook*, 91 Vt. 281, 286, 100 Atl. 42; *Turner* v. *Howard*, 91 Vt. 49, 54, 99 Atl. 236. No other grounds for the admission of the bills being pointed out, it must be held that their admission was error.

The plaintiff sought to give in evidence his judgment as to the quantity of slate of the different sizes he hauled after the arrangement with the defendant. To this the defendant objected on the ground that it would appear that he had no personal knowledge on the subject, and that his testimony would be based on hearsay. Objecting counsel assured the court that the witness had testified in a former trial, and that it there appeared that his only information about the quantity was obtained from others. The court understood from the witness' preliminary answer that he was going to speak from his own judgment and allowed the question. The defendant excepted. Thereupon, the plaintiff testified to the exact number of squares of the different thicknesses—that he drew 493 squares of half inch, 1,005 squares of ⅜ inch, and 98 squares of ¼ inch. It is quite apparent that the answer was not responsive. It did not give the plaintiff's estimate; it gave exact quantities. In

cross-examination, the plaintiff admitted that all the information that he had undertaken to give about the quantity of slate hauled by him was based solely on information given him by others. The admission of the testimony objected to was, in the circumstances, improper. An unresponsive answer does not, ordinarily, result in reversible error. Usually the matter is for the trial court to deal with as justice may require. But when, as here, the offending witness is a party and knows or should know that he is not answering the question asked him; when his counsel allow him to proceed knowing that inadmissible evidence will result, when the court rules upon an assumption unwarranted; then, in such cases, it should be taken that the party intends to go beyond the question and secure an advantage, and error results. *Holman* v. *Edson,* 81 Vt. 49, 51, 69 Atl. 143, 15 Ann. Cas. 1089; *Sanders* v. *Burnham,* 91 Vt. 480, 483, 100 Atl. 905. The record presents a situation that called for corrective action by the court of its own motion. The evidence should have been stricken out, and the jury should have been instructed to disregard it. The plaintiff was not to be cut off, of course, simply because he did not keep a book. But he was called upon to prove the amount due him by evidence admissible in court.

We are not satisfied that the argument excepted to was of sufficient consequence to result in reversible error, and find no other exception relied upon worthy of special consideration. There is no occasion to consider the motion to set aside the verdict.

*Judgment reversed, and cause remanded.*