## Pike Industries, Inc. v. Middlebury Associates, et al.

[398 A.2d 280]

No. 57-78

Present: Barney, C.J., Daley, Larrow, Billings and Hill, JJ.

Opinion Filed January 11, 1979

Motion for Reargument Denied February 7, 1979

*McKee, Giuliani & Cleveland—David A. Kelley* (On the Brief), Montpelier, for Plaintiff.

*John A. Kelley*, Middlebury, and *Philip Abramowitz* and *Robert Feldman* (On the Brief), of *Gross, Shuman, Brizdle, Laub, David & Gilfillan*, Buffalo, New York, for Middlebury Associates and Middlebury Developers, Inc.

*John H. Carnahan* of *Fitts & Olson,* Brattleboro, for R. E. Bean Construction Co.

**Barney, C.J.** All parties to this litigation concede that the plaintiff, Pike Industries, Inc., has not been paid for paving work done as a subcontractor on a shopping center construction project. The lack of payment, according to the findings, is not based on any challenge as to the quality of the plaintiff's work. The key question relates to determining which party is responsible for making payment to the plaintiff, the general contractor, R. E. Bean Construction Company, or the owner/developer, a pair of companies, Middlebury Associates, and Middlebury Developers, Inc. These parties are all defendants in the action. Middlebury Associates contracted with the Bean company, and was the equitable owner of the property. Middlebury Associates also contracted with a related company, Middlebury Developers, Inc., with respect to financing, and that corporation held legal title to the premises. For the purposes of this appeal we will treat them as they treated themselves, as a single entity, referred to as Middlebury.

The Bean company entered into a contract with Middlebury to construct a shopping center for a price guaranteed not to exceed $1,045,000.00, subject to any increases based on change orders. Middlebury's cost for the project was to be determined by Bean's "cost of the work" as defined in the contract, plus a fee of $41,800.00 to Bean. There was a date of December, 1973, for one part and May 31, 1974, for the balance by which time Bean was to "attempt" to complete the project.

The plaintiff, Pike, did not enter the picture until sometime in July, 1974, when it engaged with Bean by oral subcontract to do the paving work required by the contract with Middlebury. This work it carried on continuously until October 18, 1974. At that time, fifty-one per cent of the paving work had been accomplished, but Pike had received no payment from any source for its work. As a result, a tentative decision to cease operations was made.

On that same day, according to the evidence, Pike's representative was called by an agent of one of the principal tenants advising of the need to finish the paving so that the tenant could assume occupancy. On being told of the decision to stop work because of lack of payment, the tenant's agent indicated

that there would be a call from the owner/developer, Middlebury.

Such a call came about. Pike's representative was urged by Middlebury's agent to not only continue the paving, but expedite it. Authorization to work overtime was orally given and a representation made which, although the matter was disputed, the trial court found to be a guarantee by Middlebury to Pike of payment. A confirmatory telegram was sent from Middlebury to Pike which read as follows:

> Regarding Middlebury Shopping Center persuant [sic] to our telephone conversation you are directed to bill Middlebury Developers, Inc. directly for the work performed and you are further authorized to perform all necessary overtime to complete your work by Sunday, Oct. 20, 1974.

The paving work was in fact completed November 6, 1974. The lower court found that no loss or prejudice resulted from the postponed completion. At the completion of the paving a billing invoice was sent to Bean, with copies to Middlebury and others showing an amount due of $115,651.13. On November 11, 1974, according to the testimony, Middlebury advised Bean that Middlebury was terminating the contract and taking over construction. This action purported to be in accordance with a right of termination given the owner under the master contract with Bean. The findings do not reflect that the terminating action was initiated by Middlebury, but it is not a matter of dispute. The only controversy about it is whether or not the termination by Middlebury was based on justifiable cause within the provisions of the contract.

The pertinent provisions of the master contract, in evidence as an exhibit, gave to the owner, Middlebury, the right to terminate on seven days' notice if certain circumstances, such as receivership, bankruptcy or failure to pay subcontractors, among others, pertain. In such a case, the owner may go ahead and complete the construction and recover from the contractor, Bean, any costs over the contract price. At the same time, the owner engages to become liable for obligations, commitments and unsettled claims already incurred in good faith by the contractor.

Middlebury did, in fact, proceed to complete the project. The result was that a dispute arose between it and Bean concern-

ing termination and the attempt by Middlebury to assess the cost overruns against Bean. This led to the arbitration proceedings whose relevance to the litigation now before us was contested by Middlebury.

In the meantime, Pike, still having had no pay for the work it had done, filed a mechanic's lien under 9 V.S.A. § 1921 on December 11, 1974. On March 6, 1975, this action was brought to comply with 9 V.S.A. § 1924. The original complaint alleged direct contracts with Bean and with Middlebury Developers, Inc., that corporation having legal title to the premises at the time the lien was filed. The complaint was amended to include an allegation of direct contract between Pike and Middlebury Associates and a count that asserted that Middlebury Developers, Inc. had guaranteed payment to Pike for all indebtedness to it incurred by Bean or by Middlebury Associates. The Middlebury answer included two cross-claims: one against Bean for $600,000 damages based on breaches of the contract between Bean and Middlebury; the second, a claim against Bean for any amounts found owing from Middlebury to Pike. The answers also raised affirmative defenses based on the Statute of Frauds and lack of consideration as to any alleged agreement between Middlebury and Pike.

It was a separate suit by Bean against Middlebury arising out of this same construction project that gave rise to the arbitration proceedings already noted. The award in favor of Bean, which is still under appeal in state court, specifically omitted any consideration of the Pike claim and its allocation between the parties. All of the litigation was delayed while the arbitration award was tested in federal court. That action was dismissed.

Although the litigation arises from a complex state of facts, the issues on appeal involve only a few aspects of the whole relationship. In defense against the judgment in favor of Pike, Middlebury acknowledges that it made a contract directly with Pike. But Middlebury views that contract as only involving the authorization of and payment for overtime necessary under the arrangement evidenced by the telegram of October 18, 1974, already quoted. It is standing on its Statute of Frauds defense because of its claim that there was no intention of making an indemnity contract involved in the October, 1974 transaction.

592

■ Taking as the first issue the sufficiency of the telegram put into evidence as the writing to satisfy the requirements of the Statute of Frauds, we find none of the parties strongly arguing its adequacy. Most of the briefing concerns itself with reasons in support of the nonapplication of the Statute of Frauds. Our examination of the case and the exhibits confirms that, under our law, satisfaction of the requirements of the Statute of Frauds was not demonstrated. Although the Statute is merely a rule of evidence, litigants who timely raise it are entitled to its enforcement. *Troy* v. *Hanifin*, 132 Vt. 76, 80, 315 A.2d 875 (1974) ; *McDonald* v. *Place*, 88 Vt. 80, 83, 90 A. 948 (1914).

The Statute of Frauds, 12 V.S.A. § 181, in subsection (2) applies to a "special promise to answer for the debt, default or misdoings of another." It requires that the agreement upon which such action is brought, or a memorandum thereof, be in writing, signed by the party to be charged, or by his lawfully authorized agent. Both the fact of signature and evidence of the authority of an agent to sign have been held essential in our law. *Couture* v. *Lowery*, 122 Vt. 239, 244, 168 A.2d 295 (1961).

■ In this case there has been introduced no such signed document. The telegram contains no actual signature. The evidence does not disclose whether it was dispatched by telephone, or by submission of a written text. If the latter, no signed version has been introduced, if one exists, nor any signed authority of the sending agent. Therefore the Statute of Frauds bars use of the telegram as written evidence of an indemnity contract, and we so hold.

Disposition of the Statute of Frauds issue is required not only by the pleadings, but by the decision of the trial court. The judgment order below found Bean and Middlebury jointly and severally liable to the plaintiff for the full amount of the paving contract. Since the order seeks to impose liability on both Bean and Middlebury, however phrased, the trial court must have determined it to be a contract of indemnity with Middlebury in the posture of surety. But, as we have just determined, the Statute of Frauds bars such a result here.

■ On the other hand, the conclusions of the trial court speak of a separate contractual arrangement between Middlebury and Pike. Such a contract, in cases such as this, may not be subject to the Statute of Frauds. *Enos* v. *Owens Slate Co.*, 104 Vt. 329, 333, 160 A. 185 (1932). As is pointed out in that case, the issue of whether or not a promise is original and not under the Statute, or collateral, is usually a factual issue. The new promise is original if it contemplates a discharge of the first contracting party and the substitution of the party involved in the new contract.

■ The trial court's award of judgment against Bean for the full obligation runs counter to any inferences in its findings and conclusions of any separate, original contract between Pike and Middlebury. Nor is there any factual finding making any allocation of the costs of paving between Bean and Middlebury. Thus, neither the findings nor the judgment order in their present form support recovery against Middlebury on the theory of a separate, original contractual undertaking. The Statute of Frauds bars recovery on an indemnity theory. In the ordinary situation, this would be dispositive of the whole litigation in Middlebury's favor. It does not do so here.

Middlebury has acknowledged from the outset its separate obligation to Pike for the overtime work referred to in the October, 1974 telegram. This obligation as one applying to Middlebury and not to Bean has had no recognition in the allocation of contractual liability. Unresolved is the further issue of whether this original contract applied to all work done after the telegram, or to the total performance of Pike, or merely to the overtime wages. With the Statute of Frauds barring the result reached by the trial court, these issues require resolution. Since they are questions of fact, *Pocket* v. *Almon*, 90 Vt. 10, 14, 96 A. 421 (1916), and are nowhere answered, we cannot achieve a final result in this Court. The matter must be remanded. Presumably, on remand, the other issues urged as being undisposed of will be dealt with consistent with the state of facts arrived at on retrial. This includes any determination of Bean's liability to Middlebury, if any, for payments Middlebury may be required to make to Pike.

*Judgment reversed and cause remanded for rehearing consistent with the views expressed in the opinion.*