# Frank W. Whitcomb Construction Corp. v. Cedar Construction Co., Westway Mall, and McCormick, Medlin and Sullivan

[459 A.2d 985]

No. 82-003

Present: Barney, C.J., Billings, Hill, Underwood and Peck, JJ.

Opinion Filed February 14, 1983

*Black, Black & Shreve,* White River Junction, for Plaintiff-Appellee.

*Sullivan & McClallen,* Rutland, for Defendants-Appellants Westway Mall.

**Barney, C.J.** The plaintiff, a paving subcontractor, was not fully paid by the general contractor, Cedar Construction Co., and brought suit for the balance against Cedar Construction, Westway Mall and its partners, McCormick, Medlin and Sullivan. Westway was having a shopping center built and had contracted with Cedar to build it. Westway contracted only with Cedar; Cedar, in turn, independently entered into agreements with numerous subcontractors and materialmen. A divided court found Cedar, which neither appeared nor participated in the trial, to be insolvent and the plaintiff entitled to recover the balance due it from the remaining defendants, along with a like judgment against the defendant Cedar. The Westway defendants appeal from that ruling.

The Westway defendants point out that they paid Cedar all the money due it under the general contract. Further, these defendants insist that they neither entered into contractual agreements, nor had any direct dealings, with any subcontractors which would raise any duty to cover Cedar's failure to pay over money due to subcontractors. Basically, it is the position of these defendants that there is no legal basis, raised by any facts in the case, to support their liability to the plaintiff.

The factual scenario is not complex and is, in the main, undisputed. In August of 1977, Westway, as owner, contracted with Cedar for the construction of a shopping mall in West Rutland for a total price of $802,000.00. Work had already begun in April of that year and by October, 1977, Westway had

paid Cedar about $270,000.00. By mid-October, however, Westway's mortgagee banks came to suspect Cedar was not paying its subcontractors on the project, and insisted that Westway set up a so-called "trustee" account with Cedar. The purpose of the account was to enable oversight of payments to the subcontractors: one Westway partner was designated "trustee," and would draft checks payable directly to the subcontractors, after approval by a panel consisting of the president of Cedar, an agent of Westway and a representative for the two banks involved. Although the checks were drawn off the "trustee" account, and made payable to the subcontractors, most of the payments continued to be delivered to the subcontractors by the president of Cedar.

This account was set up after Cedar had contracted with the plaintiff, but before any performance by the latter. Plaintiff began the paving work in early November, 1977, and such work was finished satisfactorily on November 22, 1977. The plaintiff invoiced the project to Cedar in January, 1978: the total bill amounted to some $60,000.00. In May, plaintiff received a $10,000.00 payment and in June another $10,000.00. Apparently Westway claims that a further payment of $8,179.24 was paid to plaintiff on December 12, 1977, but the findings do not reflect it, though the exhibits in the case disclose it. This item requires further resolution below, but does not otherwise affect the issues in the case.

In July, 1978, plaintiff, along with the other subcontractors, received notice from the Westway defendants that Cedar had been paid in full, including extras. Prior to this notice, the subcontractors had all continued to bill Cedar directly, as they had not been given notice of the "trustee" arrangement. Shortly after the notice of completion went out, Cedar wrote to all subcontractors instructing them to bill any remaining charges directly to the Westway defendants.

In September, 1979, the plaintiff sued Cedar for the balance of the money due; in January, 1980, it amended the complaint to include as defendants Westway and the three partners composing the entity. The suit against Cedar is based on the contract entered into between plaintiff and Cedar; the added count claims that the Westway defendants and Cedar by their actions modified the contract originally existing between Westway and Cedar, making Westway liable to plaintiff for the unpaid bal-

ance due it from Cedar. Since there was admittedly no contract between Westway and plaintiff, the basis for recovery by plaintiff Whitcomb must be found in the agreement between Cedar and Westway with respect to the "trustee" account set up to pay the subcontractors. The plaintiff variously argued below and on appeal for a novation theory, an agency theory and a surety theory. Cedar in effect defaulted, but the Westway interests appeared, denied the allegations, and affirmatively pleaded both payment in full to Cedar and the Statute of Frauds as defenses. A majority of the trial court held that Cedar, Westway and its partners were liable to Whitcomb.

The novation contention does not stand up under the facts. As pointed out in *Pioneer Credit Corp.* v. *Carden,* 127 Vt. 229, 235, 245 A.2d 891, 895 (1968), a novation is never presumed, and must, therefore, have evidentiary support. A critical requirement is proof of a mutual understanding and consent among all concerned that there has been a transfer of the obligation involved from one party to another. The knowing acceptance of all parties is crucial. *H. P. Hood & Sons* v. *Heins,* 124 Vt. 331, 340, 205 A.2d 561, 567 (1964). Here the plaintiff corporation was entirely uninformed of the transaction asserted to be the act of novation: it was not notified of the so-called "trustee" account, nor of the revised manner of payment. The doctrine is thus unavailable to it.

Nor is the agency argument successful. Plaintiff's position is that the establishment of the "trustee" account which was designed to protect and benefit Westway made Westway the principal and Cedar the agent for the purpose of disbursements. However, the evidence here is uncontroverted that all payments after October 19, 1977, were made by the "trustee" partner at the direction of Cedar, once the invoices were validated as to performance. Thus, it was the "trustee" acting as paymaster who was in the position of agent for Cedar, rather than the reverse. That is, neither the "trustee" partner nor Westway attempted to act in the capacity of principal, by exercising independent judgment or control regarding the disbursement of funds. Therefore, on these facts we cannot agree that Westway "modified" its contractual relations with Cedar to place itself in the position of principal directly liable to plaintiff.

Nor is plaintiff entitled to recover against Westway on a suretyship theory. The obligation of a surety is to put its own assets forward as a resource to insure the payment of obligations owed by the one for whom it stands in the position of surety. Cf. *Westinghouse Electric Supply Co. v. B. L. Allen, Inc.*, 138 Vt. 84, 90–91, 413 A.2d 122, 127 (1980); see also 74 Am. Jur. 2d *Suretyship* §§ 1, 7–9. Such a guarantee is not limited to the fund measured by the contract price owed to the general contractor, for example, but reflects a guarantee of payment. It must be conceded that there is no such explicit agreement in this case between any of the parties, including Westway. Nowhere did Westway agree, either orally or in writing, to guarantee the payment of Cedar's debts to its subcontractors. In fact, Westway's contract with Cedar contains some general conditions which are specifically designed to prevent any contractual obligation between Westway and any subcontractor. There is no contract provision such as that in the case of *Pike Industries, Inc. v. Middlebury Associates*, 136 Vt. 588, 590, 398 A.2d 280, 281 (1979), whereby the party in the position Westway stands here may take over the completion of the project, but in so doing becomes liable for the obligations incurred by the contractor. In any event, Westway simply did not "take over" from Cedar and finish its own project. The evidence is uncontradicted that Cedar completed the job it contracted to do as general contractor.

Without a contract upon which to base a claim of suretyship, the plaintiff argues that such a pledge of indemnity from Westway's assets arose by operation of law from the acts of Westway. The only act upon which such a theory can rest is the undertaking by one of Westway's partners to act as disbursing officer for Cedar out of money due or becoming due to Cedar through performance of the contract. Plaintiff did not make any effort to create a builder's lien; other than the claim before us, no action of any kind was taken against the owners. Cf. *id.* at 591, 398 A.2d at 281–82.

It must be kept constantly before us that the legislature regarded such surety claims as being so appealing to assert and so difficult to defend against that it gave that kind of contract special attention in the Statute of Frauds, insisting upon a writing. 12 V.S.A. § 181(2). While the impact of that requirement will not immediately concern this case until the possible

existence of some such suretyship relationship appears from the evidence, nevertheless, it does indicate the burden a claimant is under in attempting to develop such a claim as a matter of law without a writing.

The threshold question submitted then is whether there is any evidence that supports a claim directly against Westway, given that Westway has already fully paid Cedar for construction of the mall? What equitable principle compels a finding that Westway continues to be liable? Certainly there is nothing to show the plaintiff to have been misled to its detriment either deliberately or accidentally. Nor is there the slightest evidence that when plaintiff contracted with Cedar, and did not require a performance bond or construction insurance, it was relying on Westway or Westway's assets to protect it from loss. The evidence is plain that plaintiff, at all relevant times, never knew the identity of the project's owners. No change of position was induced, no fraud was practiced and no expectation was thwarted by Westway. Nor can it be argued that there could be any third party beneficiary concept involved, since the contract in this case specifically negates it. See generally, *Pike Industries, Inc.* v. *Middlebury Associates,* 140 Vt. 67, 436 A.2d 725 (1981).

Thus, there is no contractual relationship on which to premise recovery, nor any equitable interest supporting enforcement of the judgment. One's natural sympathy may run toward a contractor seeking a source of recompense for his labors, but without a legal footing, his efforts must fail. The risk of loss, which perhaps might have been guarded against by prior agreement or indemnity provision, must on these facts remain where it falls.

Since the judgment in favor of the plaintiff must be reversed as being without legal or factual support, it is unnecessary to treat the other issues raised by the defendants. However, the disparity in the amount due from Cedar to the plaintiff does require redetermination.

*The default judgment against Cedar Construction Co. in favor of Frank W. Whitcomb Construction Corp. is affirmed except as to amount, and the cause is remanded for a redeter-*

*mination of the sum due. The judgment against Westway Mall and McCormick, Medlin and Sullivan is stricken and the cause dismissed as to those parties.*