*Berkshire Bank v. The Harvest Grille, Inc.*, 313-10-17 Bncv (Barra, J., Nov. 20, 2018)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

STATE OF VERMONT

| | |
|---|---|
| SUPERIOR COURT<br>Bennington Unit | CIVIL DIVISION<br>Docket No. 313-10-17 Bncv |
| Berkshire Bank,<br>     Plaintiff<br><br>     v.<br><br>The Harvest Grille, Inc.,<br>Thomas H. Rose,<br>Hassan Chani,<br>Thomas S. Norton,<br>George R. Gordy,<br>Limited Appearance,<br>     Defendants | Decision on<br>Motion for Summary Judgment |

This matter comes before the Court on Plaintiff's Motion for Summary Judgment. Plaintiff brought a breach-of-contract claim, contending that Defendants failed to pay the sums due on two promissory notes and four commercial guaranties. For the reasons set forth below, Plaintiff's Motion for Summary Judgment is GRANTED.

FINDINGS OF FACT

The following findings are made by a preponderance of the evidence. See *Lewis v. Cohen*, 157 Vt. 564, 571 (1991) (noting that to establish a breach-of-contract claim, plaintiff must establish its case by a preponderance of the evidence.). On August 2, 2006, Defendant, The Harvest Grille, Inc., executed a promissory note with Factory Point National Bank for $100,000.00 and per-annum interest of 9.75%. On the same day, Defendants Thomas Rose, Hassan Chani, Thomas Norton, and George Gordy each executed a commercial guaranty of the full amount of the note. On May 1, 2013, Plaintiff Berkshire Bank, successor by merger to Factory Point National Bank, and Defendant Harvest Grille executed a modification agreement, where they agreed to bifurcate the note into two separate promissory notes. Note A was executed in the amount of $60,579.24 and was interest bearing, whereas note B bore a principal amount of $25,580.24 and was not interest bearing. Both notes were set to mature on August 2, 2016. The sums went unpaid by that date and Plaintiff filed suit for breach of contract on October 30, 2017.

Defendant Chani submitted an Answer on December 11, 2017, in which he claimed that the Complaint failed to state a cause of action upon which relief may be granted. Defendant Gordy filed an Answer on December 14, 2017, claiming that a settlement agreement in a 2010 case between himself and his co-guarantors absolved him of liability under the notes. Defendants Harvest Grille, Rose, and Norton filed a third Answer on January 18, 2018, claiming that Plaintiff failed to allege a valid assignment of the original note after the merger between

Factory Point National Bank and Plaintiff Berkshire Bank. Defendants Harvest Grille, Rose, and Norton, now joined by Gordy, filed an Amended Answer on April 4, 2018. They once again alleged that Plaintiff failed to prove a valid assignment of the note, and that Defendant Gordy was not a party to the 2013 modification agreement that bifurcated the original note and is thus not liable under the two resulting notes.

On February 22, 2018, the Court entered the parties' Discovery/Alternative Dispute Resolution Stipulation, under which all written discovery and depositions were to take place by August 1, 2018. No discovery was sought by the deadline.

On July 19, 2018, Plaintiff filed a Motion for Summary Judgment. Plaintiff contends that Defendants have a duty to pay the amounts due under the notes and guaranties; that they have breached their obligations by failing to pay the amounts due; that damages have resulted therefrom; and that, there being no disputes of material fact, it is entitled to judgment in its favor. As of June 30, 2018, the amounts due were $45,501.72 in principal, $8,673.26 in interest, and $237.66 in late charges under note A, with an additional per diem interest rate of $12.32; the full principal amount of $25,580.84 under note B; and legal fees of $6,067.55. The total sum was then $86,061.03.

On August 13, 2018, Defendant Gordy filed a Cross-claim against co-defendants Rose and Norton. The Cross-claim avers that Rose and Norton sued Gordy in 2010 in this Court for non-payment of his share of the promissory note. The matter was settled by a "mutual general release" on December 3, 2010, under which Rose and Norton, in consideration for an $18,000 promissory note, agreed to hold harmless, indemnify, and defend Gordy from any claim arising from his ownership of Harvest Grille, including the loan with Berkshire Bank. Defendant Gordy argues that under the settlement agreement, Rose and Norton are liable to him for any judgment against him and for costs and attorney's fees associated with his defense in this matter. He further avers that given the settlement agreement, no judgment should issue against him for the other guarantors' failure to pay Berkshire Bank. Alternatively, he requests that if a judgment does issue against him, that he receive credit for the payments he made to Defendants Rose and Norton.

On September 18, 2018, Defendant Gordy filed a Memorandum in Opposition to Plaintiff's Motion for Summary Judgment—the only opposition filed to that motion. On October 1, 2018, Mr. Gordy filed an Amended Cross-claim, which tracks the original in all relevant respects. Defendants Rose and Norton filed an Answer to the Amended Cross-claim on October 3, 2018. On October 12, 2018, Plaintiff filed a Reply in Support of the Motion for Summary Judgment. Finally, on October 22, 2018, Defendant Gordy filed a Supplemental Memorandum in Opposition to the Motion for Summary Judgment.

CONCLUSIONS OF LAW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." V.R.C.P. 56(a). The record evidence must be considered in the light most favorable to the nonmoving parties, who receive the benefit of all reasonable doubts and inferences. *Stone v. Town of Irasburg*, 2014 VT 43, ¶ 25, 196 Vt. 356, 367; *Robertson v. Mylan Labs., Inc.*, 2004 VT 15, ¶ 15, 176 Vt. 356, 362.

2

At the threshold, both the Motion for Summary Judgment and Defendant Gordy's Memorandum in Opposition were timely filed. Under V.R.C.P. 56(b), "[a] party may file a motion for summary judgment at any time until 30 days after the close of all discovery." Here, Discovery was scheduled to end by August 1, 2018. Plaintiff filed the motion on July 19, 2018. The Motion is accordingly timely. A party adverse to a motion for summary judgment may oppose the motion "up to 30 days after the service of the motion upon the party." V.R.C.P. 56(b). Under V.R.C.P. 6(b)(1)(A), "[w]hen an act may or must be done within a specified time, the court may, for good cause, extend the time . . . if a request is made before the original time or its extension expires." See also *Pease v. Windsor Dev. Review Bd.*, 2011 VT 103, ¶ 25, 190 Vt. 639, 644. Here, Defendants filed a Motion to Extend the Time to Respond on August 10, 2018. The Court granted the motion and extended the time to oppose until September 18, 2018. Defendant Gordy filed his Memorandum in Opposition on that date.

Defendant Chani's December 11, 2017 Answer claimed as an affirmative defense that the Complaint failed to state a cause of action upon which relief may be granted. Accordingly, the first issue is whether Plaintiff has a legitimate cause of action. Failure to pay the obligation in a promissory note creates a cause of action cognizable at law. See, e.g., *Roy v. Mugford*, 161 Vt. 501 (1994). The same is true for guaranties, which are contracts governed by general principles of contract law. *Wells Fargo Bank Minnesota, N.A. v. Rouleau*, 2012 VT 19, ¶ 9, 191 Vt. 302, 306. Therefore, the Complaint states a cause of action upon which relief may be granted. Defendant Chani's affirmative defense is without merit and does not create a genuine dispute as to any material fact.

A second issue arises from Defendants' third Answer on January 18, 2018, which claimed as an affirmative defense that Plaintiff failed to allege a valid assignment of the note in the merger between Factory Point National Bank and Plaintiff Berkshire Bank.[1] First, when financial institutions merge, the resulting institution is deemed to be a continuation of the merged entity such that all property—including rights, interests, and assets—of the merged entity, "immediately by act of law and without any conveyance or transfer and without further act or deed," is vested in and continues to be the property of the resulting institution. 8 V.S.A. § 18101(b); see also 9 C.J.S. Banks and Banking § 160 ("A bank formed by or surviving a consolidation or merger becomes the owner of the property and contracts of the constituent banks, and succeeds to their rights and powers, except as otherwise provided by statute or the consolidation agreement."). Second, the note is a negotiable instrument and is thus subject to the requirements of the Uniform Commercial Code (UCC). *U.S. Bank Nat. Ass'n v. Kimball*, 2011 VT 81, ¶ 13, 190 Vt. 210, 216; see also 9A V.S.A. § 3–104(a) (defining negotiable instrument). Accordingly, Plaintiff must show that it is a "[p]erson entitled to enforce" the note because it is "(i) the holder of the instrument, (ii) a nonholder in possession of the instrument who has the rights of a holder, or (iii) a person not in possession of the instrument who is entitled to enforce the instrument." 9A V.S.A. § 3–301.

Plaintiff has produced an affidavit from its vice-president, James Phelan, affirming that Harvest Grille executed, and the four guarantors guaranteed, the original promissory note with Factory Point National Bank on August 2, 2006, and that the latter merged with Berkshire Bank on September 21, 2007. Plaintiff also attached a letter dated October 18, 2007 from the

---

[1] The defense claimed in the second answer is addressed below.

3

Massachusetts' Office of the Commissioner of Banks certifying the merger. Plaintiff, moreover, produced the note before this Court and is thus a "person entitled to enforce" the note as "the holder of the instrument." See 9A V.S.A. § 3–301. The Court is satisfied that a valid merger occurred between the two banks, such that Berkshire Bank, "immediately by act of law," retained Factory Point National Bank's interest in the promissory note. Thus, no assignment was necessary for Plaintiff to enforce its rights under the note. Accordingly, this issue does not raise a genuine dispute as to any material fact.

The third issue arises from Defendant Gordy's Memorandum in Opposition to the Motion for Summary Judgment. Mr. Gordy argues that a genuine dispute of fact exists in that the modification agreement absolved him of liability under the note. He submits that Harvest Grille was a "defunct" corporation on the date of the modification agreement; that only Mr. Rose and Mr. Norton signed that agreement; that he did not know about the agreement; that the result was an entirely new debt between Plaintiff and Defendants Rose and Norton in their individual capacities; and that accordingly the contract principle of novation operates to discharge him of liability under the note.

A novation requires "a valid existing contract which is extinguished by mutual agreement between the original obligors and obligees and [a] new party." *H.P. Hood & Sons v. Heins*, 124 Vt. 331, 340 (1964); see also Restatement (Second) of Contracts § 280 (1981) ("A novation is a substituted contract that includes as a party one who was neither the obligor nor the obligee of the original duty."). A novation is "never presumed, and must, therefore, have evidentiary support." *Frank W. Whitcomb Const. Corp. v. Cedar Const. Co.*, 142 Vt. 541, 544 (1983). Finding a novation requires "proof of a mutual understanding and consent among all concerned that there has been a transfer of the obligation involved from one party to another." *Id.* It is this mutual understanding and consent "that discharges the original undertaking and transfers the obligation to the new participant." *H.P. Hood & Sons*, 124 Vt. at 340.

The modification agreement did not constitute a novation for two reasons. First, there was no new party to the agreement. The original promissory note was executed between Harvest Grille and Factory Point National Bank. The modification agreement was executed between Harvest Grille and Berkshire Bank, which, as discussed above, was the resulting institution from the merger and is thus deemed to be a continuation of Factory Point National Bank. Nor is there any merit in Mr. Gordy's contention that Harvest Grille was "defunct" at the time of the Modification Agreement. He directs the Court to the Vermont Secretary of State's website, which lists Harvest Grille as "inactive." That same website, however, notes that the change to inactive occurred on December 31, 2013—months after the Modification Agreement was executed on May 1, 2013. Moreover, there is no evidence that a dissolution of Harvest Grille took place under the requirements of Chapter 14 of Title 11A of the Vermont Statutes Annotated, which governs dissolution of business entities.

Second, there is no evidence of a mutual understanding and consent to transfer and discharge the promissory note. The case is analogous to *Pioneer Credit Corp. v. Carden*, 127 Vt. 229, 235 (1968). There, the defendants executed a promissory note to finance the purchase of well digging machinery. *Id*. at 231. The note went unpaid and the parties signed a refinancing agreement, which provided that "except as modified, all terms and conditions of the first agreement should remain in full force and effect." *Id*. at 231–32. The defendants

4

subsequently claimed novation. *Id.* at 235. The Supreme Court held that the manifest intention of the parties compelled a finding that the original note was modified by the refinancing agreement but not thereby discharged. *Id.*

Here, nothing in the modification agreement remotely suggests a mutual understanding to discharge the original note or relieve any party of its liability. The contrary intention is manifest. Paragraph 3 of the modification agreement provides:

Borrower acknowledges and agrees that:

(a) the liabilities arising out of the Note and Loan Documents are legal, valid and binding obligations and enforceable in accordance with their terms;

(b) the liens, encumbrances and security interests granted to Bank remain valid, perfected and enforceable; and

(c) Except to the extent that Bank has agreed to limit or modify its rights thereto pursuant to this Agreement, (i) Bank may enforce the payment and performance of all liabilities and obligations of Borrower as set forth in the Note and Loan Documents and applicable law, (ii) Bank reserves and does not waive any of the rights under the Note or any of the Loan Documents, the terms and conditions of which remain in full force and effect, except as specifically modified herein.

Paragraph 7 provides:

Except to the extent that they are modified herein, the terms of the Note and Loan Documents shall remain in full force and effect following the execution of this Agreement, and nothing herein shall constitute a waiver of any of the Bank's rights or remedies in the Note and Loan Documents.

The record is clear that the modification agreement was meant merely to modify the sums due under the note, not to discharge defendants of their obligations. There being no new party and no mutual understanding to transfer and discharge the promissory note, even considering the record evidence in the light most favorable to Defendant Gordy, his novation argument does not stand up to scrutiny and thus fails to create a genuine dispute of material fact.

The fourth issue stems from Defendant Gordy's Memorandum in Opposition to the Motion for Summary Judgment, his Cross-claim, and the second Answer. Mr. Gordy argues that as a matter of equity judgment against him should not issue because of the 2010 settlement agreement, under which Rose and Norton, in consideration for an $18,000 Promissory Note, agreed to hold harmless, indemnify, and defend Gordy from any claim arising from his ownership of Harvest Grille, including the loan with Berkshire Bank.

Mr. Gordy's argument speaks volumes about his co-defendants' liability to him under their 2010 settlement agreement. It says not a word, however, about his liability to Plaintiff under his guaranty of the promissory note. These are two distinct lines of liability that will not be blurred together. The Restatement of Suretyship and Guaranty provides that "[w]hen there is

5

more than one secondary obligor with respect to the same underlying obligation, each secondary obligor is liable to the obligee in accordance with the terms of its secondary obligation." Restatement (Third) of Suretyship & Guaranty § 52 (1996). The comments then clarify that "[t]he relationship among the various secondary obligors determines the rights and duties among them but does not determine their duties to the obligee. The latter duties are determined not by the relationships among the secondary obligors but, rather, by the terms of the secondary obligations." *Id*. at comment a. Here, the settlement agreement between Mr. Gordy and his co-guarantors grants Mr. Gordy rights and duties towards his co-guarantors but does not relieve him of his duties under the guaranty.

Moreover, it is well established that one who seeks equity must do equity. See, e.g., *Shell Oil Co. v. Jolley*, 130 Vt. 482, 491 (1972). Mr. Gordy seeks recognition of the payments and terms of the 2010 settlement agreement. So too must there be recognition of his liability under the guaranty. That liability, as expressed in the instrument, is to "guarantee the full and punctual payment, performance and satisfaction of the indebtedness of borrower to lender." The guaranty further provides that "any payments made on the indebtedness will not discharge or diminish guarantor's obligations and liability under this guaranty for any remaining and succeeding indebtedness." Equity demands not only that the 2010 settlement agreement be respected, but also that the guaranty be respected. Accordingly, Mr. Gordy's equitable argument does not raise a genuine dispute as to any material fact. His Cross-claim on the 2010 settlement agreement, not being the subject of a summary judgment motion, remains to be litigated in due course.

What remains is to determine whether Plaintiff is entitled to judgment as a matter of law. To prevail on a breach-of-contract claim, a plaintiff must prove "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." *Abad v. People's United Bank*, No. 286102009, 2011 WL 11555546, at *6 (Vt. Super. Ct. May 02, 2011) (quoting *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 177 (2d Cir. 2004)). Here, Harvest Grille executed a promissory note with Factory Point National Bank for $100,000.00. Defendants Rose, Chani, Norton, and Gordy each executed a commercial guaranty of the full amount of the note. Plaintiff, as successor to Factory Point National Bank, and Harvest Grille then executed a modification agreement, where they agreed to bifurcate the note into two separate promissory notes. Both notes were set to mature on August 2, 2016. That date came and neither Harvest Grille nor any of the four guarantors had paid the full balance of the notes. This constituted material breaches of these valid contracts. See Restatement (Second) of Contracts § 235(2) (1981) ("When performance of a duty under a contract is due any non-performance is a breach."). As of June 30, 2018, Plaintiff had suffered damages totaling $86,061.03, including principal, interest, late charges, and attorney's fees. Accordingly, Plaintiff is entitled to judgment in its favor as a matter of law.

6

ORDER

For the reasons set forth above, Plaintiff's Motion for Summary Judgment is GRANTED. Plaintiff shall have 14 days to submit additional affidavits and briefing concerning the final amount of damages, in particular, attorney's fees. Defendants shall then have 14 days to respond.

Dated at Bennington, Vermont this _____ day of November 2018.


_____
David Barra
Superior Court Judge